Filed 3/22/17 Certified for publication 4/12/17 (order attached)

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re GREGORY L. RHOADES<br><br>on<br><br>Habeas Corpus. | D070488<br><br>(Imperial County<br>Super. Ct. No. EHC01917) |

APPEAL from a judgment of the Superior Court of Imperial County, Raymond A. Cota, Judge.  Reversed and remanded with directions.

Kamala D. Harris and Xavier Becerra, Attorneys General, Phillip J. Lindsay, Assistant Attorney General, Julie Malone and Gregory J. Marcot, Deputy Attorneys General, for Appellant.

Kevin Smith, under appointment by the Court of Appeal, for Petitioner and Respondent.

In this appeal, officials of the California Department of Corrections and Rehabilitation (the Department) challenge the trial court's order granting a petition for writ of habeas corpus filed by Gregory L. Rhoades, who is a Native American prisoner

incarcerated at Calipatria State Prison (Calipatria). In granting Rhoades's petition, the trial court concluded that the prohibition on the use of straight tobacco during prisoners' Native American religious ceremonies violated the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA) (42 U.S.C. § 2000cc et seq.) and it ordered the California Department of Corrections to "formulate and implement policies permitting and reasonably regulating the possession and use of straight tobacco" during those ceremonies.

We conclude that the trial court improperly granted relief in favor of Rhoades without holding an evidentiary hearing on disputed factual issues. We therefore reverse the judgment, and we remand this matter with directions that the trial court hold an evidentiary hearing. On the RLUIPA claim, the trial court shall hold an evidentiary hearing on the disputed factual issue of whether Rhoades's religious exercise is substantially burdened by the policy prohibiting the use of straight tobacco in religious ceremonies. If Rhoades meets his burden of proof on that issue, the trial court shall then consider the factual issue of whether the policy against the use of straight tobacco constitutes the least restrictive means of furthering a compelling governmental interest. In the event the trial court does not grant relief under RLUIPA on remand, it should consider whether any of Rhoades's other claims provide a basis for relief.

I.

FACTUAL AND PROCEDURAL BACKGROUND

A.      *Rhoades's First Habeas Corpus Petition*

Rhoades is a prisoner at Calipatria and a member of a Native American tribe.  On February 4, 2015, Rhoades filed a petition for writ of habeas corpus in Imperial County Superior Court alleging that prison officials (Respondents)[1] had denied Native American prisoners the right to practice their religion freely and traditionally by banning the use of straight tobacco during Native American religious ceremonies.  Rhoades alleged (1) an infringement of his right to freedom of religion under the First and Fourteenth Amendments to the United States Constitution; (2) a failure to comply with Penal Code section 5030.1, subdivision (a);[2] and (3) a failure to comply with RLUIPA (42 U.S.C. § 2000cc et seq.).   The superior court denied the petition on March 11, 2015, without issuing an order to show cause.

---

[1]      Specifically, Rhoades named as Respondents the following individuals:  (1) W. L. Montgomery, alleged to be the warden at Calipatria; (2) Claudia Macias, alleged to be the community resources manager at Calipatria; (3) Charles Richey, alleged to be a chaplain and the American Indian spiritual help designee at Calipatria; and (4) M. D. Stainer, alleged to be the director of the California Department of Corrections and Rehabilitation.

[2]      Penal Code section 5030.1, subdivision (a) provides:  "The possession or use of tobacco products by inmates under the jurisdiction of the Department of Corrections is prohibited. The Director of Corrections shall adopt regulations to implement this prohibition, which shall include an exemption for departmentally approved religious ceremonies."  Rhoades alleges that the Department has not complied with the statutory requirement that it adopt an exemption for departmentally approved religious ceremonies with respect to the use of tobacco during Native American religious practice.

3

B.    *Rhoades's Instant Habeas Corpus Petition*

Rhoades then filed a new petition for writ of habeas corpus in this court on April 29, 2015 (the Petition).  The Petition, which was verified, deleted some of the allegations in the previous petition and made additional allegations, some of which were directed at clarifying misunderstandings apparent in the superior court's statements in the order denying the first petition.  The Petition named the same Respondents.  As before, the Petition alleged (1) an infringement of Rhoades's right to freedom of religion under the First and Fourteenth Amendments to the United States Constitution; (2) a failure to comply with Penal Code section 5030.1, subdivision (a); and (3) a failure to comply with RLUIPA (42 U.S.C. § 2000cc et seq.).  The Petition also added an allegation that Respondents violated the American Indian Religious Freedom Act (AIFRA) (42 U.S.C. § 1996).[3]

The Petition alleged among other things that Rhoades was "being denied the right to make prayer ties, prayer offering, and spirit offerings with 'straight tobacco' which is an essential, and central part of the American Indian religious rites," and clarified that Rhoades's claim was not based on the "use of the Sacred Pipe."  To support the allegation

---

[3]    AIFRA states:  On and after August 11, 1978, "it shall be the policy of the United States to protect and preserve for American Indians their inherent right of freedom to believe, express, and exercise the traditional religions of the American Indian, Eskimo, Aleut, and Native Hawaiians, including but not limited to access to sites, use and possession of sacred objects, and the freedom to worship through ceremonials and traditional rites."  (42 U.S.C. § 1996.)  We note that courts have held that " 'AIRFA is simply a policy statement and does not create a cause of action or any judicially enforceable individual rights.' "  (*U.S. v. Mitchell* (9th Cir. 2007) 502 F.3d 931, 949.)

4

that use of straight tobacco is a central part of Native American religious practice, Rhoades attached as an exhibit a document from 1987. Specifically, the document appears to be a lodged stipulation for entry of judgment in a lawsuit filed in federal court in the Eastern District of California (*Sample v. R. G. Borg*, Civ. No. S-85-0208-LLK (*Sample*).)[4] *Sample* was apparently a class action lawsuit brought by Native American inmates of Folsom State Prison against prison officials. Rhoades's Petition identifies paragraph 14 of the lodged stipulation in *Sample*, which states: "Defendants recognize that American Indian believers and practitioners believe that tobacco ties are of religious significance. Tobacco ties consist of tobacco wrapped in cloth fragments and secured by clove hitches on a string. American Indian believers and practitioners shall be allowed to make and possess tobacco ties for offerings at the sweat lodge ceremony under the same terms that other general population prisoners are allowed to use and possess chewing and smoking tobacco and the containers in which chewing and smoking tobacco are stored."

In the Petition, Rhoades alleged that after the possession or use of tobacco in prison was generally prohibited by the enactment of Penal Code section 5030.1 in 2004, prison officials at Calipatria continued to allow Native American prisoners to use straight tobacco in their religious ceremonies. According to Rhoades the policy was changed in June 2014. Although not completely clear from the allegations in the Petition, it appears

---

4      The stipulation for entry of judgment attached by Rhoades to the Petition was a lodged copy signed only by counsel for the plaintiffs. There is no indication that the stipulation was approved by the defendants in that case or by the court. Therefore, without further evidence as to whether the lodgment was ultimately approved by defendants and the court, the lodgment is of limited evidentiary value in this case.

that the new policy prohibits the use of straight tobacco in religious ceremonies and requires that it be replaced by a mixture called "kinnikinnick," which contains tobacco and other herbs.[5] Rhoades alleges that "[t]here are no alternatives that can replace the use of 'straight tobacco' for the making of prayer ties . . . ." He further alleges that it would not adversely affect the functioning of the prison were Native American prisoners permitted to use straight tobacco during religious ceremonies, as that practice was allowed for 10 years after tobacco was prohibited in prison, with no demonstrated problems.

On May 22, 2015, we issued an order to show cause why the relief prayed for in the Petition should not be granted, and we directed that the order to show cause be returnable before the Imperial County Superior Court. Our order stated: "The superior court is directed to appoint counsel for Rhoades, set a schedule for any supplemental briefing, the return and traverse, conduct any evidentiary hearing that may be required and determine the matter."

C.      *Proceedings in the Trial Court on the Petition*

After receiving our order, the trial court issued its own order to show cause and directed Respondents to file a return. The trial court also appointed counsel for Rhoades.

---

5      The policy put into effect in June 2014 is clarified in an exhibit filed by Respondents as part of their return. Specifically, a memorandum from Chaplain Richey to Native American sweat lodge practitioners states that "kinnikinnick is the only form of 'tobacco' legally authorized for use in Sweat Lodge ceremony. . . .  Any previous authorization for use of straight tobacco is no longer in effect . . . ."

At Rhoades's subsequent request, appointed counsel was relieved and Rhoades represented himself in the trial court.[6]

The proceedings in the trial court were initially stayed based on Respondents' representation to the trial court that the Department was considering adopting statewide regulations allowing the use of straight tobacco in Native American religious ceremonies, which would have made the instant dispute moot. Respondents ultimately informed the trial court that the expected regulations would not be adopted. The stay was lifted and Respondents filed a return to the Petition on December 17, 2015.

In their return, Respondents admitted that Rhoades had exhausted his administrative remedies but denied that Rhoades was entitled to relief. Among other things, Respondents explained that current Department policy allows Native American prisoners to use kinnikinnick during religious ceremonies, and they specifically denied "that the required use of kinnikinnick instead of straight tobacco burdens, let alone substantially burdens, Rhoades's ability to exercise his religious beliefs."

Respondents also alleged that they have "a legitimate penological interest" in denying Rhoades the ability to use straight tobacco. Specifically, Respondents alleged that "like the possession of . . . other contraband, an inmate's possession of tobacco within a prison creates an issue of safety and security for the entire institution" and stated that the Department "has a significant interest in minimizing health care costs of its

---

6     On appeal Rhoades is represented by a court-appointed attorney from Appellate Defenders, Inc.

employees and inmates, which is accomplished by prohibiting tobacco use in any of its institutions."

Respondents' return also included the allegation that "Rhoades's allegations within his petition do not give rise to any evidentiary issues that need to be resolved before his legal claims can be addressed."

Rhoades filed a denial to the return (sometimes referred to as a "traverse") on March 28, 2016. He also disputed Respondents' allegation that the use of straight tobacco during religious ceremonies would compromise safety and security in the prison or meaningfully impact health care costs. Rhoades disagreed with Respondents' statement that no evidentiary hearing was needed, stating that his "habeas petition depends on the resolution of the facts at issue, and *that requires an evidentiary hearing*, discovery and expert witnesses." (Italics added.)

In his memorandum of points and authorities in support of his denial, Rhoades expanded on his allegations about the importance of tobacco use in Native American religious ceremonies. "Petitioner avers that Respondents are in fact removing a central ritual aspect of the Sweat Lodge ceremony. The smoking and offering of tobacco is a central religious ceremony of the Sweat Lodge. The sending of ritual prayers to the Creator with tobacco in the Sweat Lodge ceremony is recognized as a central and principal means by which purification is accomplished . . . ." Rhoades stated that he "can have an expert witness testify to these facts" and "[a] traditional Spiritual Leader can testify to Petitioner's claim."

8

On April 8, 2016, the trial court issued an order granting the Petition.[7] In its statement of decision, the trial court stated that our May 22, 2015 order to show cause "clearly manifested a disagreement with the [Department] that, as a matter of law, the substitution of kinnikinnick for straight tobacco adequately balances the security interests of the [Department] against [Rhoades's] rights under [RLUIPA]." The trial court proceeded to explain that it had relied solely on the Petition, the return, the denial, and the exhibits attached to those documents, to conclude that Rhoades was entitled to relief on the Petition without holding an evidentiary hearing because Rhoades had established a violation of RLUIPA.

The trial court stated, "The 2014 announcement of the kinnikinnick policy offers no reason for the change at that time, and Respondent offers no indication, from a religious standpoint, as to how it is that the kinnikinnick is an appropriate substitute for straight tobacco in the ceremonies. Although Respondent has stated an argument for the

---

[7] It appears that in ruling on the Petition, instead of considering the Petition (filed with this court on Apr. 29, 2015), the trial court considered the petition that Rhoades filed in Imperial County Superior Court on February 4, 2015, and which was already denied by that court. We reach this conclusion because (1) the trial court explicitly identifies February 4, 2015, as the date of Rhoades's petition; (2) the content of the trial court's order granting the Petition refers to allegations appearing solely in the February 4, 2015 petition (such as an allegation about a shortage of wood for sweat lodge ceremonies) and also states that Rhoades was unclear about matters that Rhoades actually clarified in the subsequent Petition (such as his tribal affiliation); (3) in preparing the clerk's transcript, the clerk of the Imperial County Superior Court did not include the Petition in the clerk's transcript, and instead included the February 4, 2015 petition; and (4) in their joint stipulation to augment the record to include the Petition, the parties explained that they had been informed by the clerk of Imperial County Superior Court that the Petition was not in the court's file.

prohibition of tobacco use in its facilities generally, it has not provided either evidence or an offer of proof that kinnikinnick is a fully appropriate substitute for straight tobacco in American Indian religious ceremonies generally, or that any procedures the [Department] might have in place to control the management and disposition of straight tobacco that would be used in such ceremonies would be an undue burden on its systems. [¶] In the absence of such a showing in the Return and with the denial of the pertinent allegations of the Return in the Denial and affirmative allegations by Petitioner that his rights under [RLUIPA] are being inappropriately infringed, the granting of relief may be had without the necessity of an evidentiary hearing." The trial court noted that according to the Department Operations Manual, which Rhoades submitted as an exhibit to both the Petition and his denial, the Department allows sacramental wine to be used in religious ceremonies.[8] The trial court stated, "No reason is articulated by Respondent as to why similar procedures could not be implemented with respect to ceremonial tobacco."

Based on this reasoning, the trial court concluded that "given the dearth of evidence as to the propriety of kinnikinnick as a medium in American Indian ceremonies, and the dearth of evidence that it would not be reasonably possible for the [Department]

---

[8] According to our review of the documents attached to Rhoades's pleadings, it *may* be the case that *non-alcoholic* sacramental wine is used in prison religious ceremonies. Rhoades attaches to the Petition and to his denial a document titled "Department Operations Manual Supplement Religious Services Attachment D." The date and purpose of this document is not clear from the record. However, we note that it references the use of *non-alcoholic* sacramental wine in religious ceremonies. On this factual issue, as on many others, additional factual development is necessary through an evidentiary hearing because the documents in the record are not adequate to create an accurate understanding of the relevant facts.

10

to formulate a policy for the use of straight tobacco in American Indian religious ceremonies that is similar to that already in place for sacramental wine, such relief is appropriate." The trial court therefore issued the following order: "1. An evidentiary hearing is not required. [¶] 2. The court deems the petition as one for Writ of Mandate, and commands the [Department], within a reasonable time, to exercise reasonable discretion to formulate and implement policies permitting and reasonably regulating the possession and use of straight tobacco in American Indian religious ceremonies only, just as it currently maintains such policies as to sacramental wine."[9]

## II.

## DISCUSSSION

Respondents appeal from the trial court's order. Summing up their argument, Respondents contend, "Misconstruing the significance of this Court's [order to show cause], the superior court erroneously relieved Rhoades of his burden to prove (as opposed to just allege) that [the Department's] policy substantially burdened the exercise of his religious beliefs. . . . The superior court . . . erred by granting relief without an evidentiary basis." Respondents argue, "to the extent the parties' pleadings contained conflicting factual allegations regarding the viability of kinnikinnick as an appropriate

---

[9]    It is not clear why the trial court deemed the Petition to be a petition for writ of mandate. Case law establishes that a "RLUIPA claim may be adjudicated in [a] habeas corpus proceeding and . . . a violation of RLUIPA may be the basis for habeas corpus relief." (*In re Garcia* (2012) 202 Cal.App.4th 892, 902 [granting relief under RLUIPA in a habeas corpus proceeding, including issuing an order directing the Department to allow the prisoner to participate in a kosher meal program].)

11

substitute for pure tobacco under the RLUIPA, an evidentiary hearing should have been conducted before the superior court resolved the disputed issues of fact."  As we will explain, we agree.  The trial court improperly resolved *disputed factual issues* in a habeas corpus proceedings without first holding an evidentiary hearing and considering evidence on the following issues relevant in a RLUIPA claim:  (1) whether Rhoades proved that the prohibition on the use of straight tobacco substantially burdens his ability to exercise his religious beliefs; and (2) in the event Rhoades proves a substantial burden on his religious exercise, whether Respondents proved that the ban on the use of straight tobacco is the least restrictive means of furthering a compelling governmental interest.

A.    *Legal Standards Applicable to a RLUIPA Claim*

Although Rhoades alleged several legal grounds for relief in the Petition, the trial court cited RLUIPA as the basis for its order granting relief.  We accordingly limit our analysis to Rhoades's RLUIPA claim and express no view on the merits of the claims on which the trial court did not rule.[10]

RLUIPA provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person  [¶]  (1) is in furtherance of a compelling

---

[10]    As we have explained, the Petition also alleged (1) an infringement of Rhoades's right to freedom of religion under the First and Fourteenth Amendments to the United States Constitution; (2) a failure to comply with Penal Code section 5030.1, subdivision (a); and (3) a violation of AIFRA (42 U.S.C. § 1996).  If necessary, the trial court should consider these claims on remand.

12

governmental interest; and [¶] (2) is the least restrictive means of furthering that compelling governmental interest." (42 U.S.C. § 2000cc-1(a).) Thus, put simply, RLUIPA "prohibits a state or local government from taking any action that substantially burdens the religious exercise of an institutionalized person unless the government demonstrates that the action constitutes the least restrictive means of furthering a compelling governmental interest." (*Holt v. Hobbs* (2015) 574 U.S. __ [135 S.Ct. 853, 859] (*Holt*).)

Under RLUIPA, the petitioner bears the initial burden of proving that the challenged policy implicates his religious exercise. (*Holt*, *supra*, 574 U.S. at p. ___ [135 S.Ct. at p. 862].) "RLUIPA protects 'any exercise of religion, whether or not compelled by, or central to, a system of religious belief,' [42 U.S.C.] § 2000cc-5(7)(A), but, of course, a prisoner's request for an accommodation must be sincerely based on a religious belief and not some other motivation [citation]." (*Ibid.*) "In addition to showing that the relevant exercise of religion is grounded in a sincerely held religious belief," a petitioner also bears the burden of proving that the governmental policy "substantially burdened that exercise of religion." (*Ibid.*) "RLUIPA's 'substantial burden' inquiry asks whether the government has substantially burdened religious exercise . . . , not whether the RLUIPA claimant is able to engage in other forms of religious exercise." (*Ibid.*)

If the petitioner meets his burden to prove that the challenged policy substantially burdens his exercise of religion, the burden shifts to the respondents to show that their policy " '(1) [was] in furtherance of a compelling governmental interest; and (2) [was] the least restrictive means of furthering that compelling governmental interest.' [42 U.S.C.]

13

§ 2000cc-1(a)." (*Holt, supra*, 574 U.S. at p. ___ [135 S.Ct. at p. 863].) In examining whether a compelling interest exists, "RLUIPA requires us to ' "scrutiniz[e] the asserted harm of granting specific exemptions to particular religious claimants" ' and 'to look to the marginal interest in enforcing' the challenged government action in that particular context." (*Ibid*.) Further with respect to the second part of the required showing " '[t]he least-restrictive-means standard is exceptionally demanding,' and it requires the government to 'sho[w] that it lacks other means of achieving its desired goal without imposing a substantial burden on the exercise of religion by the objecting part[y].' [Citation.] '[I]f a less restrictive means is available for the Government to achieve its goals, the Government must use it.' " (*Id*. at p. 864.)

Illustrating the burden shifting analysis applicable in a RLUIPA claim, our Supreme Court in *Holt* analyzed whether a statewide prison policy prohibiting a devout Muslim prisoner from growing a one-half-inch-long beard violated the rights of that prisoner under RLUIPA. (*Holt, supra*, 574 U.S. at p. ___ [135 S.Ct. at p. 867].) Initially, the prisoner met his burden during an evidentiary hearing by proving that the prohibition on growing a beard substantially burdened his religious exercise. Specifically, he presented undisputed testimony that he believed growing a beard was a required dictate of his religious faith and he showed that he would be disciplined by the prison if he acted upon those religious beliefs. (*Id*. at p. 862.) The burden therefore shifted to prison officials to prove that their refusal to allow the prisoner to grow a one-half-inch-long beard was the least restrictive means of furthering a compelling governmental interest. (*Id*. at p. 863.) *Holt* concluded, based on the evidence, that prison officials did not satisfy

14

their burden because they could not establish that the prohibition on a short beard was the least restrictive means of achieving their expressed goals of preventing prisoners from hiding contraband or disguising their identities. (*Id*. at pp. 863-865.) Among other things, *Holt* observed that in the unlikely event that contraband could be hidden in a short beard, that danger could be eliminated by searching the beard, as is done with hair and clothing. (*Id*. at p. 864.) Further, the problem of prisoners concealing their identity by shaving off their beards could be prevented by requiring that prisoners be photographed without a beard on a periodic basis. (*Id*. at p. 865.) *Holt* explained that in determining whether prison officials have met their burden to prove that they are using the least restrictive means to achieve an interest, "[c]ourts must hold prisons to their statutory burden, and they must not 'assume a plausible, less restrictive alternative would be ineffective.' " (*Id*. at p. 866.)

B.      *The Procedures Applicable in Habeas Corpus Proceedings*

As our next step in assessing whether the trial court improperly granted the Petition based on Rhoades's RLUIPA claim without holding an evidentiary hearing on disputed factual issues, we review the procedures applicable to habeas corpus proceedings.

"A habeas corpus proceeding begins with the filing of a verified petition for a writ of habeas corpus. . . . When presented with a petition for a writ of habeas corpus, a court must first determine whether the petition states a prima facie case for relief—that is, whether it states facts that, if true, entitle the petitioner to relief—and also whether the stated claims are for any reason procedurally barred. . . . [¶] . . . When . . . a habeas

15

corpus petition is sufficient on its face (that is, the petition states a prima facie case on a claim that is not procedurally barred), the court is obligated by statute to issue a writ of habeas corpus." (*People v. Romero* (1994) 8 Cal.4th 728, 737, citations omitted (*Romero*).) To avoid the physical necessity of having a prisoner brought before the court, courts have " 'developed the practice of ordering the custodian to show cause why the relief sought should not be granted.' [Citations.] When used as a substitute for the writ of habeas corpus, the order to show cause 'directs the respondent custodian to serve and file a written return[,]' . . . when a habeas petition states a prima facie case for relief." (*Id.* at p. 738.)

"The return, which must allege facts establishing the legality of the petitioner's custody, 'becomes the principal pleading' . . . and is 'analogous to the complaint in a civil proceeding' . . . . [¶] Upon the submission of the written return, the petitioner 'may deny or controvert any of the material facts or matters set forth in the return, or except to the sufficiency thereof, or allege any fact to show either that his imprisonment or detention is unlawful, or that he is entitled to his discharge.' . . . The petitioner's response to the return, commonly known as the traverse, may incorporate the allegations of the petition. . . . Any allegation of the return not controverted by the traverse is deemed admitted. . . . The traverse is analogous to the answer in a civil proceeding. . . . Thus, it is through the return and the traverse that the issues are joined in a habeas corpus proceeding." (*Romero*, *supra*, 8 Cal.4th at pp. 738-739, citations omitted.)

"Once the issues have been joined in this way, the court must determine whether an evidentiary hearing is needed. If the written return admits allegations in the petition

16

that, if true, justify the relief sought, the court may grant relief without an evidentiary hearing. . . . Conversely, consideration of the written return and matters of record may persuade the court that the contentions advanced in the petition lack merit, in which event the court may deny the petition without an evidentiary hearing. . . . Finally, if the return and traverse reveal that petitioner's entitlement to relief hinges on the resolution of factual disputes, then the court should order an evidentiary hearing." (*Romero*, *supra*, 8 Cal.4th at pp. 739-740, citations omitted.) California Rules of Court, rule 4.551(f) states: "An evidentiary hearing is required if, after considering the verified petition, the return, any denial, any affidavits or declarations under penalty of perjury, and matters of which judicial notice may be taken, the court finds there is a reasonable likelihood that the petitioner may be entitled to relief and the petitioner's entitlement to relief depends on the resolution of an issue of fact."

When, as here, the appellate court specifies in the order to show cause that the return is to be filed in the superior court "[t]his effectively transfers the proceeding to the superior court, and that court will conduct any evidentiary hearing that may be required. After the evidentiary hearing, the court in which the return has been filed will then either grant or deny relief based upon the law and the facts as so determined." (*Romero*, *supra*, 8 Cal.4th at p. 740.)

C.    *Our May 22, 2015 Order to Show Cause Was Not a Ruling on the Merits that Rhoades Had Satisfied His Burden on His RLUIPA Claim*

In this case, when we issued the order to show cause returnable in the superior court, there had not yet been a return or a denial filed, and therefore the issues had not yet

17

been joined in the habeas corpus proceeding.  Under those circumstances, our order to show cause could not have expressed a view on the issue of whether Rhoades would ultimately prevail on his RLUIPA claim.  Our issuance of the order to show cause "signifie[d] our '*preliminary determination* that the petitioner has made a prima facie statement of specific facts which, *if established*, entitle [petitioner] to habeas corpus relief under existing law.' "  (*In re Serrano* (1995) 10 Cal.4th 447, 455, second italics added.)

In issuing the order to show cause, we relied on the allegation in the Petition that (1) by prohibiting the use of straight tobacco during religious ceremonies, Respondents were denying Rhoades "the right to make prayer ties, prayer offering, and spirit offerings with 'straight tobacco' which is an essential, and central part of the American Indian religious rites," and (2) Respondents acted without a valid penological interest in prohibiting the use of straight tobacco in religious ceremonies because, allegedly, no problems had arisen during the 10 years when an exception was made for use of straight tobacco in religious ceremonies, and there were less restrictive means to accomplishing their penological interests.  We issued the order to show cause because *if ultimately proved to be true*, those allegations would entitle Rhoades to relief under RLUIPA. However, in issuing the order to show cause we expressed no view as to whether Rhoades would be able to *prove* that his religious practice was substantially burdened or whether Respondents would be able to *prove* that the prohibition on the use of straight tobacco was the least restrictive means of furthering a compelling governmental interest, both of which are factual issues that must ultimately be resolved in deciding a RLUIPA claim.

18

The trial court therefore erred in interpreting our May 22, 2015 order to show cause as "manifest[ing] a disagreement with the [Department] that, as a matter of law, the substitution of kinnikinnick for straight tobacco adequately balances the security interests of the [Department] against [Rhoades's] rights under [RLUIPA]." Our order to show cause was merely a *preliminary determination* based on the allegations in the Petition. It was not a ruling on any of the ultimate issues in this case.

Rhoades contends that the trial court properly relied on the May 22, 2015 order to show cause to shift the burden to Respondents under RLUIPA. Specifically, Rhoades argues that "this Court already has held, by issuing the Order to Show Cause, that Rhoades has made his *prima facie* case that the change in policy completely banning the use of straight tobacco in American Indian religious ceremonies substantially burdens his exercise of religion. Thus, . . . the burden then properly shifted to [Respondents] to present evidence that the new ban was necessitated by a 'compelling governmental interest' and that the complete ban on use of straight tobacco was the 'least restrictive means'[.]" Rhoades's argument fails because it is premised on a misunderstanding of our order to show cause. The sole significance of our order to show cause was to establish that the Petition "states facts that, *if true*, entitle the petitioner to relief." (*Romero*, *supra*, 8 Cal.4th at p. 737, italics added.) Regardless of the order to show cause, Rhoades is still required to *prove* as a factual matter the *truth* of his allegations that Respondents' policy substantially burdens his religious exercise. Only *if* Rhoades is ultimately able to make such showing would the burden shift to Respondents to prove that by adopting their policy prohibiting the use of straight tobacco they were furthering a compelling

governmental interest in the least restrictive manner. (RLUIPA, 42 U.S.C. § 2000cc-1(a); *Holt*, *supra*, 574 U.S. at p. ___ [135 S.Ct. at pp. 862-863].)

C.     *The Return and Denial Established Disputed Factual Issues That Required the Trial Court to Hold an Evidentiary Hearing*

As the return and the denial frame the factual issues in dispute in the proceedings, we look to those pleadings to answer the question before us, namely whether disputed factual issues existed that required the trial court to hold an evidentiary hearing before ruling on Rhoades's RLUIPA claim.

As we have explained, to prevail on his RLUIPA claim, Rhoades had the initial burden to establish that the prohibition on the use of straight tobacco during religious ceremonies substantially burdened his religious exercise. (RLUIPA, 42 U.S.C. § 2000cc-1(a); *Holt*, *supra*, 574 U.S. at p. ___ [135 S.Ct. at p. 862].) The return *disputed* that Rhoades's religious exercise was substantially burdened. Specifically, Respondents denied "that the required use of kinnikinnick instead of straight tobacco burdens, let alone substantially burdens, Rhoades's ability to exercise his religious beliefs." In Rhoades's denial, he disputed Respondents' assertion that his religious exercise was not substantially burdened. Further, in his memorandum of points and authorities in support of the denial, Rhoades explained that at an evidentiary hearing he would present evidence from a Native American spiritual leader establishing the importance of using straight tobacco during religious ceremonies.

Thus, based on the content of the return and the traverse, a clear factual dispute existed as to whether the prohibition on the use of straight tobacco during religious

20

ceremonies substantially burdened Rhoades's religious exercise.[11] The trial court's order erroneously ignored this factual dispute. Instead of holding an evidentiary hearing, the trial court appears to have erroneously relied on our May 22, 2015 order to show cause for its ruling *on the merits* that Respondents' policy against the use of straight tobacco substantially burdens Rhoades's religious exercise.

Further, the return and denial established that a clear factual dispute existed regarding the second part of the RLUIPA analysis, namely whether, in the event the burden shifted to Respondents, they could prove that the prohibition on the use of straight tobacco was the least restrictive means of furthering a compelling governmental interest. (RLUIPA, 42 U.S.C. § 2000cc-1(a); *Holt*, *supra*, 574 U.S. at p. ___ [135 S.Ct. at p. 863.) In their return, Respondents alleged they have a "compelling state interest [in] prison security" and that "like the possession of . . . other contraband, an inmate's possession of tobacco within a prison creates an issue of safety and security for the entire institution." Further the return alleged that Department "has a significant interest in minimizing health care costs of its employees and inmates, which is accomplished by prohibiting tobacco

---

11    The trial court's order noted that Respondents had included in their denial a paragraph stating that "Rhoades's allegations within his petition do not give rise to any evidentiary issues that need to be resolved before his legal claims can be addressed." Rhoades also relies on this statement by Respondents to defend the trial court's decision to rule on the Petition without holding an evidentiary hearing. Unlike the trial court and Rhoades, we do not view this statement as a concession by Respondents that the trial court could rule on the Petition in favor of Rhoades even if, after reviewing the return and the denial, it concluded that disputed factual issues needed to be resolved. Further, as we have explained, it is the return and the denial that frame the issues. Respondents' statement as to whether it believed the Petition (rather than the return and the denial) presented disputed factual issues is of no significance.

21

use in any of its institutions."  In their memorandum of points and authorities in support of the return, Respondents argued that "the allowance of kinnikinnick is already the least restrictive alternative to a complete ban on all tobacco."

Rhoades disputed these allegations in his denial, taking the position that the use of straight tobacco during religious ceremonies would not compromise safety and security in the prison or meaningfully impact health care costs.  Rhoades argued in the memorandum of points and authorities in support of his denial that Respondents could not establish a compelling state interest based on security in prohibiting the use of straight tobacco during religious ceremonies because no problems had arisen under the former policy, and there were also less restrictive means of preventing any security problems, such as instituting a policy of searching prisoners after the religious ceremonies.  Rhoades also disputed that any meaningful health problems were associated with the use of straight tobacco in religious ceremonies because "the amount of straight tobacco used in [the] ceremony is nominal, and fleeting, literally, ephemeral."  Taken together, these statements establish a factual dispute between the parties as to whether Respondents were furthering a compelling governmental interest in the least restrictive manner by prohibiting the use of straight tobacco in religious ceremonies.

As our Supreme Court has emphasized, at the *pleading* stage of a habeas corpus proceeding, "the [respondent's] burden [in the return] is one of pleading, not proof." (*People v. Duvall* (1995) 9 Cal.4th 464, 483.)  Here, although Respondents presented their *allegations* as to the disputed factual issue of whether their policy was based on a compelling governmental interest and was narrowly tailored, they did not have the

22

opportunity to make a *factual presentation*. Nevertheless, the trial court ruled against Respondents based on an erroneous requirement that they present evidence at this stage of the proceedings, noting the "dearth of evidence" and stating that Respondents had not "provided either evidence or an offer of proof" that their policy was based on a compelling state interest and was the least restrictive approach.[12]

In sum, "if the return and traverse reveal that petitioner's entitlement to relief hinges on the resolution of factual disputes, then the court should order an evidentiary hearing." (*Romero*, *supra*, 8 Cal.4th at pp. 739-740.) Based on the factual disputes described above, the trial court was required to hold an evidentiary hearing before ruling on the Petition, and the trial court erred in not doing so.

---

[12] Rhoades defends the trial court's decision to rule on the Petition despite the fact that the return and the denial established disputed factual issues, contending that Respondents "were given every opportunity to present their own documentary evidence," but "[t]hey chose not to do so." However this argument fails because it misapprehends the applicable procedures in a habeas corpus proceeding. As we have explained, the role of the return and the denial are to frame the issue to determine if an evidentiary hearing is required, not to constitute a final presentation of evidence to resolve disputed issues. (*Romero*, *supra*, 8 Cal.4th at pp. 738-739.)

DISPOSITION

The judgment is reversed and this matter is remanded with directions for the trial court to hold an evidentiary hearing on Rhoades's April 29, 2015 Petition and thereafter to issue a ruling. The parties are to bear their own costs on appeal.

O'ROURKE, J.

WE CONCUR:

NARES, Acting P. J.

AARON, J.

Filed 4/12/17

**CERTIFIED FOR PUBLICATION**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re GREGORY L. RHOADES<br><br>on<br><br>Habeas Corpus. | D070488<br><br>(Imperial County<br>Super. Ct. No. EHC01917)<br><br>ORDER CERTIFYING OPINION<br>FOR PUBLICATION |

THE COURT:

The opinion in this case filed March 22, 2017 was not certified for publication. It appearing the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c), appellant's request pursuant to California Rules of Court, rule 8.1120(a) for publication is GRANTED.

IT IS HEREBY CERTIFIED that the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c); and

ORDERED that the words "Not To Be Published In Official Reports" appearing on page 1 of said opinion be deleted and the opinion herein be published in the Official Reports.

_____
O'ROURKE, Acting P. J.

Copies to: All parties