Filed 10/15/18

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| CALIFORNIA DEPARTMENT OF STATE HOSPITALS,<br><br>   Plaintiff and Respondent,<br><br>v.<br><br>A.H.,<br><br>   Defendant and Appellant. | 2d Crim. No. B286187<br>(Super. Ct. No. 17MH-0109)<br>(San Luis Obispo County)<br><br>ORDER MODIFYING OPINION AND DENYING REHEARING<br>[NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed herein on September 21, 2018, be modified as follows:

1.  On page 2, second full paragraph, change the first sentence "Appellant's commitment offense occurred in 2013" to read:

"The *Qawi* petition states that appellant's commitment offense occurred in 2013."

2.  On page 3, delete the first sentence starting with "He petitioned the Superior Court for relief" and insert the following:

"Hospital filed a verified petition to authorize the continued involuntary medication of appellant pursuant to *Qawi, supra,* 32 Cal.4th 1.  (See Cal. Code, Regs., tit. 9, § 4210, subd. (p).)"

3.  At the bottom of page 3, after the last sentence "The evidence credited by the trial court is sufficient to support the *Qawi* order" insert the following footnote "[2]":

"[2]Appellant complains that the *Qawi* petition, which was verified by a hospital staff psychiatrist, was not received into evidence.  Dr. Daigle testified that he reviewed the "petition for today's matter," appellant's medical and medication records, interviewed appellant, and spoke to appellant's treating psychiatrist.  Referring to the petition, the doctor stated that appellant "did act out earlier" and was "given mood stabilizing medication," but still "has delusions."  On direct, appellant was asked about the May 4, 2017 incident alleged in the petition in which hospital police searched appellant for contraband.  Appellant said "I took advantage of the situation" and "faked an anxiety attack," before "they went and threw me in restraints."

There is no change in judgment.

Appellant's petition for rehearing is denied.

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| CALIFORNIA DEPARTMENT OF STATE HOSPITALS, <br><br>   Plaintiff and Respondent, <br><br> v. <br><br> A.H., <br><br>   Defendant and Appellant. | 2d Crim. No. B286187 <br> (Super. Ct. No. 17MH-0109) <br> (San Luis Obispo County) |

A.H. appeals from a *Qawi* order (*In re Qawi* (2004) 32 Cal.4th 1) which authorizes the California Department of State Hospitals-Atascadero (Hospital or ASH) to involuntarily administer antipsychotic medication to treat his severe mental disorder.  Appellant contends 1. the evidence does not support the finding that he is incompetent to refuse treatment, 2. the *Qawi* order violates the Free Exercise Clause of the First Amendment, and 3. The *Qawi* order violates his due process rights.

Appellant's views, whether religious or otherwise, are bizarre.  The contentions based thereon, must be rejected.  As we shall explain, the premise to this appeal is that "Zythite" or "Zahara," a religion with a congregation of one, is not a sham and

that appellant is a true believer.  He has the burden of proof on these issues (see *ante*, p. 5) and he has not met his burden.

*Sufficiency of the Evidence*

Appellant, a 31-year-old mentally disordered offender (MDO) suffers from schizoaffective disorder, bipolar type, post-traumatic stress disorder (PTSD), and cannabis use disorder, severe.  His symptoms include entrenched mood disorder featuring grandiose, often hyper-religious ideation; delusions; suicidal ideation; and post-traumatic stress nightmares with military related PTSD.

Appellant's commitment offense occurred in 2013.  He started eight fires in Oceanside.  Appellant had a backpack containing two red plastic gas containers and a Bic lighter.  Appellant admitted setting the fires then lapsed into psychosis, speaking in a language that nobody understood.

In 2017, after appellant was committed as an MDO, appellant became violent during a scheduled room check for contraband.  He physically fought the hospital police.  Then, he purposefully slammed his head against the wall and blamed the police for harming him.  Appellant had to be placed in full bed restraints because he would not stop attempting to harm staff and himself.  A month later, appellant was asked to draw a picture of his discharge plan.  Appellant drew an automatic rifle with bullets spraying and wrote "'mass shooting.'" Later in the day, appellant threatened hospital staff and clenched his fists.[1]

Hospital mental health professionals conducted two administrative hearings and determined that antipsychotic

---

[1] Even this conclusory recitation of the facts demonstrate that appellant is a danger to the community, himself, fellow patients at ASH, and Hospital staff.

medication was required to treat appellant. He petitioned the superior court for relief from the *Qawi* order. (See Cal. Code, Regs., tit. 2, § 4210, subd. (p).)

Doctor Mark Daigle, a psychiatrist at ASH testified that appellant suffered from schizophrenia with an affective disorder that required treatment with antipsychotic medication. Appellant was already taking Depakote for PTSD, but refused to take other psychiatric medications. Dr. Daigle stated that appellant's schizoaffective disorder was manifested in part by religious delusions in which appellant believed he was a prophet and contacted at night by a spirit called Zahara. Appellant denied that he was mentally ill or suffered from delusions. Dr. Daigle also opined that appellant lacked the capacity to evaluate the risks and benefits of taking antipsychotic medication.

Appellant has a history of psychiatric hospitalizations that included a commitment to Patton State Hospital where he was prescribed Zyprexa (an antipsychotic medication) and three local involuntary commitments where appellant received antipsychotic medication. Appellant stated that he experienced side effects from certain antipsychotic drugs and that "Zythite's [sic] only use organic remedies for pain and psychiatric ailment."

The trial court found that appellant lacked the capacity to refuse medical treatment and issued a *Qawi* order authorizing Hospital to involuntarily administer antipsychotic medication. We need not repeat the well-settled substantial evidence rule. (E.g., *People v. Avila* (2009) 46 Cal.4th 680, 701; *People v. Jones* (1990) 51 Cal.3d 294, 314.) The evidence credited by the trial court is sufficient to support the *Qawi* order.

3

*Freedom of Religion Defense*

Appellant contends that a patient's religious beliefs, even if perceived by others as delusional, do not warrant a *Qawi* order because it violates his constitutional right to the free exercise of religion. The United States Constitution (1st and 14th Amendments) and California Constitution (Cal. Const. art. 1, § 4) prohibit involuntary medication that burdens a patient's free exercise of religion, unless a compelling state interest outweighs the patient's interests in religious freedom. (*People v. Woody* (1964) 61 Cal.2d 716, 718; *Qawi, supra*, 32 Cal.4th at pp. 15-16.) Similar protections are found in The Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA; 42 U.S.C. § 2000cc-1(a)(1)-(2) and California's Lanterman-Petris-Short Act (Welf. & Inst. Code, § 5325.1, subd. (e)).[2]

Appellant bears the initial burden of showing that (1) he seeks to engage in the exercise of religion and (2) the *Qawi* order substantially burdens the exercise of his religion. (*Holt v.*

[2] The Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), 42 U.S.C. 2000cc-1(a) provides: "No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . unless the government demonstrates that imposition of the burden on that person: (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest."

The Lanterman-Petris-Short Act provides that persons with mental illness have the same legal rights and responsibilities guaranteed all other persons by the federal and state constitutions. (Welf. & Inst. Code, § 5325.1.) Subdivision (e) of section 5325.1 protects the patient's "right to religious freedom and practice."

*Hobbs* (2015) 135 S.Ct. 853, 862 [190 L.Ed.2d 747, 755].)  Here, there is no credible evidence that his refusal to take antipsychotic medication is grounded on a sincerely held religious belief.  (*Ibid.*; *Cutter v. Wilkinson (*2005) 544 U.S. 709, 725, fn. 13 [RLUIPA does not preclude inquiry into the sincerity of a prisoner's professed religiosity]; *In re Rhoades* (2017) 10 Cal.App.5th 896, 905 [same].)  Appellant stated that his god, Zahara, spoke to him in 2008 and that appellant was writing a book called "'The Teachings of Zahara.'"  Zahara "more or less told me not to use [antipsychotic drugs], [and] has given me insight why I should not use them."  Appellant said that he wrote 40 pages "*specifically for today*" (italics added) and "[b]asically one of the rules and guidelines Zahara has had me write[] . . . -- give me just a moment to find the page.  So here we go.  [¶]  'Zythite's [sic] only use organic remedies for pain and psychiatric ailment . . . .' [¶]  So this is why I don't use synthetic psychotropic drugs because god has more or less told me to not use them, has given me insight why I should not use them,"

Despite this new-found "insight," appellant already was taking Depakote, an antipsychotic drug for PTSD, took Zyprexa at Patton State Hospital, and took antipsychotic medication during three previous local involuntary commitments. There is no authority that the Free Exercise Clause exempts a psychiatric patient from being administered antipsychotic medication where the patient is a danger to himself/herself or others.  Appellant had previously told Dr. Daigle about his religious objections.  At the hearing appellant said he was invoking his religious-based rights "specifically for today."  This is inconsistent with appellant's medical history which reflects that appellant took Depakote and Zyprexa inorganic

5

psychotropics; and never before claimed that it violated his religious beliefs. "To merit protection under the free exercise clause of the First Amendment, a religious claim must satisfy two criteria. 'First, the claimant's proffered belief must be sincerely held; the First Amendment does not extend to "so-called religions which . . . are obviously shams and absurdities and whose members are patently devoid of religious sincerity."' [Citation.] Second, 'the claim must be rooted in religious belief, not in "purely secular" philosophical concerns.' [Citations.]" (*Malik v. Brown* (9th Cir. 1994) 16 F.3d 330, 333.)

Appellant asserts that his religious beliefs do not pose a risk of harm to others. This claim is based entirely on his own testimony and inferences drawn in his favor. This is a veiled request to reweigh the evidence. We will not do so. In addition, we observe that appellant suffers from a delusional disorder that is not entirely religion based. Excessive religiosity can be a manifestation of a patient's psychosis and there can be a "linkage between overt manifestations of religiosity and the existence or strength of the psychosis." (*People v. Sword* (1994) 29 Cal.App.4th 614, 632.) But Dr. Daigle stated that the delusions are "not just religious based but it does include that." For example, the verified petition states that appellant was previously found in possession of a carefully crafted noose and threatened to go on a hunger strike while endorsing suicidal ideation. It required one-on-one hospital monitoring for a month.

The State of California has a compelling interest under the *parens patrie* doctrine to provide care for persons who are unable to care for themselves and in preventing an individual from harming himself or others. (*Qawi, supra*, 32 Cal.4th at pp. 15-16.) Substantial evidence supports the finding that the *Qawi*

6

order furthers a compelling government interest that outweighs any religious belief. (*People v. Woody*, *supra*, 61 Cal.2d at p. 718.)

*Due Process*

Appellant argues that the *Qawi* order violates his due process rights because a disagreement between the patient and patient's doctor as to the efficacy of treatment does not support the finding that the patient lacks the capacity to make treatment decisions. (See, e.g., *Conservatorship of Waltz* (1986) 180 Cal.App.3d 722, 732 [electroconvulsive therapy].) This case cannot fairly be characterized as a simple disagreement between a patient and his doctor. There is no due process violation in this case. Hospital followed existing statutory administrative, and case law in obtaining the *Qawi* order. It is settled that antipsychotic medication may be involuntarily administered to an MDO who lacks the capacity to refuse treatment or is dangerous to others within the meaning of Welfare and Institutions Code section 5300. (*Qawi*, *supra*, 32 Cal.4th at pp. 27-28; *People v. Fisher* (2009) 172 Cal.App.4th 1006, 1013.)

*Conclusion*

The question of whether an MDO is competent to refuse antipsychotic medication focuses on three factors: (1) whether the patient is aware of his mental illness; (2) whether the patient understands the benefits and risks of treatment as well as the alternatives to treatment; and (3) whether the patient is able to understand and evaluate the information regarding informed consent and participate in the treatment decision by rational thought processes. (*Qawi*, *supra*, 32 Cal.4th at pp. 17-18; *Riese v. St. Mary's Hospital & Medical Center* (1987) 209 Cal.App.3d 1303, 1322-1323.) The trial court determined, and we agree, that appellant, fails on each of these factors.

7

*Disposition*

The judgment (*Qawi* order permitting involuntary administration of antipsychotic medication) is affirmed.

<u>CERTIFIED FOR PUBLICATION.</u>


YEGAN, Acting P. J.

We concur:


PERREN, J.


TANGEMAN, J.

8

Michael L. Duffy, Judge

Superior Court County of San Luis Obispo

_____

Jean Matulis, under appointment by the Court of Appeal for Defendant and Appellant.

Xavier Becerra, Attorney General, Julie Weng-Gutierrez, Senior Assistant Attorney General, Jennifer M. Kim, Supervising Deputy Attorney General, Jacquelyn Y. Young, Deputy Attorney General, for Plaintiff and Respondent.