Filed 6/23/21  Dept. of State Hospitals v. J.T. CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| DEPARTMENT OF STATE HOSPITALS,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>J.T.,<br><br>    Defendant and Appellant. | 2d Juv. No. B306534<br>(Super. Ct. No. 20MH-0103)<br>(San Luis Obispo County) |

J.T., an individual committed to Atascadero State Hospital (ASH) as an offender with a mental disorder (OMD),[1] appeals the trial court's order authorizing his involuntary treatment with antipsychotic medication pursuant to Welfare and Institutions

---

[1] Effective January 1, 2020, Penal Code section 2962 was amended to replace "mentally disordered offender" with "an offender with a mental health disorder."  (Pen. Code, § 2962, subd. (d)(3), as amended by Stats. 2019, ch. 649, § 1.)

Code[2] section 5300. Appellant contends the evidence is insufficient to support the court's finding that he is incompetent to make decisions about his medical treatment, and that the finding he presented a danger to others was based on inadmissible hearsay admitted in violation of *People v. Sanchez* (2016) 63 Cal.4th 665 (*Sanchez*). We affirm.

## FACTS AND PROCEDURAL HISTORY

Since 2015, appellant has been committed to ASH as an OMD. Following in-hospital panels conducted in January and February 2020, the Department of State Hospitals (DSH) obtained an order authorizing the involuntary medication of appellant pursuant to title 9, section 4210 of the California Code of Regulations. On June 11, 2020, DSH petitioned the trial court to authorize the continued involuntary medication of appellant for a period of one year.

Dr. Hadley Osran testified at the hearing on the petition. Dr. Osran, who had been appellant's treating psychiatrist in 2017, interviewed appellant prior to the hearing and reviewed his file and record. The doctor also interviewed appellant's current treating psychiatrist.

Dr. Osran opined that appellant was incompetent to make decisions about his treatment with antipsychotic medication. The doctor concluded appellant is unable to understand the benefits and risks of taking or not taking his medication. Appellant has a longstanding diagnosis of schizoaffective disorder, bipolar type. His symptoms include "agitation, increased energy, elevated mood, [and] decreased need for sleep." He has also suffered from "psychotic symptoms heavily in the area of delusions and delusional symptoms over the years."

---

[2] All undesignated statutory references are to the Welfare and Institutions Code.

2

Although appellant is "aware" of his diagnosis, "he does not believe it's true." Appellant stated his belief that "he does not really have" a mental disorder and was "free from schizophrenia" because he was "aware of the reality of the illness, the reality of being sober."

Over the years, Dr. Osran and other clinicians had repeatedly attempted to explain appellant's diagnosis to him and the need for him to receive treatment with antipsychotic medication. Dr. Osran opined that appellant was unable to understand the benefits and risks of such medication. The doctor noted that appellant did not believe he achieved "any benefit from the medication[,] despite the fact that the medications do help him, they do reduce his symptoms, they do reduce [his] hallucinations and delusions." Although appellant had complained that Geodon (his prescribed antipsychotic medication) had caused him to gain weight, weight gain is not associated with that medication. Moreover, appellant stated his belief that he would not relapse if his medication were discontinued and made clear he would not take his medication unless he was ordered to do so. The doctor noted that an involuntary medication order had been sought after appellant began refusing medication in January 2020.

Dr. Osran also opined that appellant presented a danger to others as provided in section 5300. The doctor concluded that if appellant did not take his medication "psychiatric decompensation would increase his risk of violence." On September 6, 2019, appellant "got in[to] an altercation with staff while cleaning his room" and "thrust a broomstick at staff" and "swung his fists at staff." Appellant was also involved in an "aggressive incident" while incarcerated prior to his OMD commitment and told Dr. Osran he had "several" prior arrests for assault with a deadly weapon and attempted rape.

3

Appellant testified on his own behalf. He answered "maybe" when asked if he would agree to take an antipsychotic medication that does not cause weight gain, but subsequently stated his belief that "all antipsychotic medication . . . make[s] you gain weight." He also claimed that from 2012 to 2013 he was incarcerated yet "had no psychotic symptoms" and "wasn't . . . schizophrenic."

At the conclusion of the hearing, the trial court found that appellant was both incompetent to refuse medical treatment and presented a danger to others as provided in section 5300. Accordingly, the court issued an order authorizing appellant's involuntary treatment with antipsychotic medication for a period of one year. The court reasoned it was "clear from [appellant's] statement to treatment staff that he doesn't see the need for these medications and that was [also] clear in his testimony today." The court also noted that although DSH had not sought an involuntary medication order following the September 2019 incident in which appellant exhibited assaultive behavior toward staff, appellant did not begin refusing medication until January 2020.

## DISCUSSION

Appellant contends the order authorizing his involuntary treatment with antipsychotic medication must be reversed because the evidence is insufficient to support the trial court's finding that he is incompetent to refuse such treatment. He also claims the court's finding that he presents a danger to others is based on the evidence of the September 2019 incident in which he exhibited assaultive behavior toward staff, which was inadmissible hearsay admitted in violation of *Sanchez*. We are not persuaded.

An involuntarily committed patient may forcibly be treated with antipsychotic medication if a court determines he is not

4

competent to refuse such treatment.  (*In re Qawi* (2004) 32 Cal.4th 1, 14 (*Qawi*).)  Individuals in custody may refuse to take antipsychotic medication.  (*Ibid.*)  The right of a person committed as an OMD "to refuse antipsychotic drugs is qualified."  (*People v. Fisher* (2009) 172 Cal.App.4th 1006, 1013 (*Fisher*).)  The right may be overcome by a judicial determination that (1) the OMD is incompetent or incapable of making decisions about his or her own treatment, or (2) the OMD is dangerous within the meaning of section 5300.  (*Qawi*, at p. 27.)  Either finding is sufficient to support an involuntary medication order.  (*Ibid.*)  A judicial determination of whether an OMD is competent to refuse antipsychotic medication involves the consideration of three factors:  (1) whether the patient is aware of his situation; (2) whether the patient understands the benefits and risks of treatment; and (3) whether the patient is able to understand and knowingly, intelligently, and rationally evaluate and participate in treatment decisions.  (*Id.*, at pp. 17-18.)

We review an order authorizing administration of antipsychotic medication for substantial evidence.  (*Fisher*, *supra*, 172 Cal.App.4th at p. 1016.)  We draw all reasonable inferences from the record in support of the trial court's findings.  (*People v. Clark* (2000) 82 Cal.App.4th 1072, 1082.)  We review the record in the light most favorable to the judgment or order.  (*Ibid.*)  We do not reweigh the evidence or decide the credibility of witnesses.  (*Id.*, at pp. 1082-1083.)  "To succeed under a substantial evidence review, defendant must establish that no rational jury could have concluded as it did—it does not matter that 'the evidence could reasonably be reconciled'" with a contrary finding.  (*People v. Shamblin* (2015) 236 Cal.App.4th 1, 9.)  ""An appellate court must accept logical inferences that the jury might have drawn from the evidence even if the court would have concluded

5

otherwise. [Citation.]" [Citation.]'" (*People v. Hovarter* (2008) 44 Cal.4th 983, 1015.)

Substantial evidence supports the trial court's finding that appellant is incompetent to refuse treatment with antipsychotic medication, as set forth in section 5300. Appellant's arguments to the contrary fail to account for the standard of review, which requires us to view the evidence in the light most favorable to the court's order. (*People v. Clark, supra*, 82 Cal.App.4th at p. 1082.) Appellant told Dr. Osran he does not believe that he suffers from a mental disorder. Because appellant does not accept or understand his diagnosis, the court correctly found he "lacks the mental capacity to rationally understand the nature of the medical problem, the proposed treatment, and the attendant risks." (*Qawi, supra*, 32 Cal.4th at p. 18.)

Contrary to appellant's claim, the issue "cannot fairly be characterized as a simple disagreement between a patient and his doctor" regarding the efficacy of treatment with antipsychotic medication. (*State Dept. of State Hospitals v. A.H.* (2018) 27 Cal.App.5th 441, 447.) To the extent appellant alleges a due process violation, "[t]here is no due process violation in this case. [DSH] followed existing statutory, administrative, and case law in obtaining the [involuntary medication] order. It is settled that antipsychotic medication may be involuntarily administered to an [OMD] who lacks the capacity to refuse treatment or is dangerous to others within the meaning of . . . section 5300. [Citations.]" (*Ibid*.) Substantial evidence supports the trial court's finding that appellant lacks the capacity to refuse his recommended treatment.

Because the finding that appellant is incompetent to refuse treatment is sufficient to affirm the involuntary medication order, we need not address the court's alternative finding that that appellant is dangerous within the meaning of section 5300.

6

In any event, the record belies appellant's assertion that he raised a *Sanchez* objection to Dr. Osran's testimony regarding the September 2019 incident in which appellant exhibited assaultive behavior toward staff. After the doctor offered that testimony without objection, he was asked if he knew "what [appellant's] underlying commitment offense was" and indicated that he "might" have the relevant records "to refresh [his] memory." At that point, appellant raised a *Sanchez* objection and the court overruled the objection. After Dr. Osran testified that the commitment offense was too remote to be relevant to the determination whether appellant was currently dangerous, the court sustained appellant's relevancy objection and the evidence was excluded. Because appellant did not object to Dr. Osran's testimony regarding the September 2019 incident, he forfeited his claim that the evidence should have been excluded as inadmissible hearsay under *Sanchez*. (*People v. Stevens* (2015) 62 Cal.4th 325, 333.)

### DISPOSITION

The trial court's order is affirmed.

NOT TO BE PUBLISHED.


PERREN, J.

We concur:



GILBERT, P.J.



TANGEMAN, J.

7

Jesse J. Marino, Judge

Superior Court County of San Luis Obispo

_____

Jean Matulis, under appointment by the Court of Appeal, for Defendant and Appellant.

Matthew Rodriguez, Acting Attorney General, Gregory D. Brown, Jennifer M. Kim, Supervising Deputy Attorneys General, Benjamin G. Diehl, Deputy Attorney General, for Plaintiff and Respondent.