[No. E025550. Fourth Dist., Div. Two. Aug. 4, 2000.]

THE PEOPLE, Plaintiff and Respondent, v.
KIMBERLY CLARK, Defendant and Appellant.

■■■■■■■■
■■■■■■■■■■

COUNSEL

James L. Crowder, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Jean Hume and Robert B. Shaw, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**McKINSTER, Acting P. J.**—Defendant, adjudged a mentally disordered offender (an MDO) required to undergo mental health treatment as a condition of parole, contends that (1) she should not have been forced to testify about her mental state and behavior when committing the underlying offense on which her parole was based, and (2) the evidence was insufficient to support findings that (a) she used force or violence in the underlying offense, and (b) her severe mental condition was a cause of or an aggravating factor in that offense.[1]

### FACTS AND PROCEDURAL HISTORY

The People charged defendant with grand theft from the person and alleged a prior conviction for robbery pursuant to the three strikes law. Defendant pled guilty and admitted the prior conviction, and received a sentence of 32 months in a plea bargain. Asked when changing her plea if she was under the influence of anything which might affect her judgment, she stated that she was taking lithium.

At the time defendant was paroled, the Board of Prison Terms determined that she was an MDO pursuant to Penal Code section 2962,[2] and she was detained for treatment at Patton State Hospital. Defendant filed a petition for a hearing under section 2966 challenging the BPT's decision.

A determination that a defendant requires treatment as an MDO rests on six criteria, set out in section 2962: the defendant (1) has a severe mental disorder; (2) used force or violence in committing the underlying offense; (3) had a disorder which caused or was an aggravating factor in committing the offense; (4) the disorder is not in remission or capable of being kept in remission absent treatment; (5) the prisoner was treated for the disorder for

---

[1]The mentally disordered offender law is set out in Penal Code sections 2960-2981.

[2]All ensuing statutory citations refer to the Penal Code, unless otherwise indicated.

at least 90 days in the year before being paroled; and (6) because of the disorder, the prisoner poses a serious threat of physical harm to other people. At the MDO hearing, the parties stipulated that four criteria existed, and disputed only whether defendant used force or violence in the theft from the person, and whether her disorder aggravated or was a cause of the crime.

The People adduced the police reports from the underlying offense, including reports of interviews with the victim and a witness, as evidence that defendant used force or violence in committing the crime. In his interview, the victim stated that he and defendant got into a cab in Sacramento, and he told the driver they wanted to go to South Lake Tahoe. The driver asked to see some money "up front," so the victim took $400 from his wallet and reached over the rear seat to show the money to the driver. Defendant reached over the seat and grabbed money out of his hand, then opened the door and started to run away. The victim grabbed defendant around her neck, but she broke away. He then chased her about one-half block, and knocked her down in a patch of ivy next to a sidewalk. The two were wrestling when the police arrived. The victim was trying to get the money back, but defendant was not letting him have it.

The cab driver stated in his interview that he saw defendant and her victim walking toward his cab, and they appeared to be arguing. The two got into his cab and wanted to go to South Lake Tahoe, so he asked to see some cash. The victim showed him a wad of money, and defendant snatched money out of his hand. Defendant then ran out of the cab with the victim after her.

The police officers reported that when they arrived at the scene of the incident defendant and the victim were fighting in an ivy patch. When the two were pulled apart, there was a crumpled $20 bill in defendant's hand. An officer arrested defendant, who stated that she had not taken the victim's money and did not have any more money on her person. However, during a booking search a sheriff's deputy found four $50 bills in the sole of defendant's shoe.

Pursuant to the parties' stipulations, reports of defendant's examinations by two clinical psychologists were entered into evidence. The reports reflected that defendant, age 39, had suffered a "nervous breakdown" at the age of 17, at which time she began experiencing auditory hallucinations and having trouble controlling her anger. Defendant had heard voices off and on since then, and acknowledged having taken psychotropic medications such as Haldol, Stelazine, Thorazine, and lithium. She had been variously diagnosed as suffering from schizophrenia, schizoaffective disorder, borderline

intellectual functioning, and persistent dementia induced by inhalants. She had been treated at Napa State Hospital from 1976 to 1977.[3]

One of the examining clinicians concluded defendant was suffering from a chronic and severe level of psychotic illness, "such as Schizophrenia, Paranoid Type, which is independent of her substance abuse and intellectual deficits." The other, while not diagnosing defendant with a specific disorder, determined that she had a severe mental disorder, which substantially impaired her thoughts, judgment, perception of reality, emotional processes and behavior, as evidenced by her history and her presentation at the time he examined her.

Each of the examining psychologists opined that defendant had used force or violence in the underlying offense. Each relied on the facts as set out in the police reports described above in reaching this conclusion.

Both psychologists also opined that defendant's illness played a part in the offense. One doctor reported defendant's statements to him that she was hearing voices that advised her to "go out and get money," and that the voices "made her 'real desperate like.' " She " 'heard a voice which advised her to steal the money.' " Also, she began to fear the victim wanted "to take her out of town and do harm to her," though she had no real reason to believe this. The doctor concluded that defendant's paranoia and auditory hallucinations were "at minimum an aggravating factor" in committing the offense, though the crime may have been motivated partly by criminal intent. The other doctor recounted his interview with defendant, in which she had stated that she had been prescribed psychotropic medication to control her thinking at the time of the crime, but was not taking it. He noted that defendant's past descriptions of the offense indicated she became paranoid about the victim and impulsively grabbed the money when she saw it.

Defendant was called as a witness by the prosecution, over an objection based on her privilege against self-incrimination. She recalled the underlying offense, in which she "robbed the guy," and admitted that she had a mental illness at that time. She said her mental illness and the fact she was using cocaine caused her to commit the offense. She was not taking medications at the time, and was high on cocaine, but had to try to get money to get more cocaine. She heard voices telling her to do things that were not right. She saw the victim's money and "went crazy." The victim choked her but let go,

---

[3]Because only two of the six criteria that establish that a defendant is an MDO are in issue, it is not necessary to detail the instances of assaultive behavior in their facilities which led prison and hospital authorities to determine that defendant was a danger to the physical safety of others, though the instances are described in the doctors' reports.

after which she got out of the cab and walked away. He tackled her and knocked her down, and they struggled in the bushes. She was not fighting, but was trying to get up, to get loose. The victim was trying to hold onto her until the police got there, but she was trying to get away. She hid the money in her shoe while they were struggling. Asked if she had punched, kicked, or hit the victim, she denied it. She explained that the police came and "broke it up."

On cross-examination, defendant stated she had used cocaine 30 minutes before the incident, and the voice she heard was just her "normal conscious." However, on redirect examination, she stated that "soft voices" were in control of her life then, and she did not know if they were male or female, or from where they came.

Defendant called as a witness a psychiatrist who had examined her. In direct examination, this doctor opined that defendant suffered from a personality disorder, and stated that he was "unable to connect mental disorder either as cause or aggravating in the crime." The earliest medical report relating to defendant which the doctor had reviewed for the examination was prepared in April of 1998. He thought that defendant's "aggressive and antisocial nature" was the motivating factor for the crime, rather than a severe mental disorder, and that defendant used force or violence in the underlying offense, based on his review of defendant's records.

Queried by the prosecutor, the psychiatrist stated he was not aware that defendant had told other doctors she was experiencing auditory hallucinations, that she exhibited paranoid delusions and suffered from behavioral discontrol, or that she had been prescribed psychotropic medications but had stopped taking them 30 days before the criminal incident. He stated this information would have impacted his opinion about defendant's state of mind at the time of the incident, causing him to question defendant more closely concerning what role an illness may have played in the crimes.

The hearing court found defendant to be an MDO, based on the six required criteria. It concluded that defendant, in grabbing the money from the victim, breaking free of the victim's hold on her in the cab, and resisting his attempts to control her and get the money back while they struggled in the ivy, used force and violence. The court also determined that defendant's severe mental disorder was a cause of or an aggravating factor in the underlying offense, relying on the two psychologist's reports and defendant's testimony, and noting that the two clinicians based their opinions on information that the psychiatrist lacked.

DISCUSSION

I.

*Defendant's Testimony*

 Defendant contends that having to testify about her actions and mental condition during the underlying offense violated her federal and state rights against self-incrimination, an issue of first impression for this court. She argues that in an MDO hearing pursuant to section 2966 a defendant called as a witness may be asked only about her present physical or mental condition. As we explain below, we disagree.

 Both the federal and California Constitutions guarantee the privilege against self-incrimination. (U.S. Const., 5th Amend; Cal. Const., art. I, § 15.) Two distinct and separate testimonial privileges are covered by these guarantees: (1) in criminal cases, an absolute right not to be called or to testify as a witness, and (2) in both civil and criminal cases, the right not to answer questions which might tend to incriminate the witness in criminal activity. (*Cramer v. Tyars* (1979) 23 Cal.3d 131, 137 [151 Cal.Rptr. 653, 588 P.2d 793].)

 Defendant claims that she should not have been asked about her actions and mental state at the time of the criminal incident because answers to these questions required her to testify about force used in the crime, which had not been adjudicated at the time of her conviction, thus exposing her to further inpatient commitment. In making this claim, she relies primarily on *People v. Pretzer* (1992) 9 Cal.App.4th 1078, 1085 [11 Cal.Rptr.2d 860], (disapproved on other grounds in *People v. Anzalone* (1999) 19 Cal.4th 1074, 1080 [81 Cal.Rptr.2d 315, 969 P.2d 160]) in which a sister appellate court held that a defendant challenging a commitment pursuant to section 2962 should not have been questioned about his use of force or violence in committing his underlying offense. (*Pretzer*, *supra*, 9 Cal.App.4th at pp. 1084-1085.) Having decided that the MDO law was an ex post facto law as applied to the defendant, the appellate court concluded that, because lengthening the defendant's mental health commitment was an additional punishment for the underlying offense, being forced to testify about use of force or violence in that offense, which had not previously been adjudicated, forced the defendant to incriminate himself in criminal activity, which increased his punishment. (*Id.* at p. 1085.)

Defendant's reliance on *People v. Pretzer*, *supra*, 9 Cal.App.4th 1078, is misplaced. As the Attorney General points out, *Pretzer* was based on the

same appellate court's earlier decision that section 2962 was an ex post facto law that further punished criminal acts without requiring a finding of present dangerousness, concluding that the statute had "overwhelming penal attributes and therefore constitute[d] part of" a defendant's punishment for a crime. (*People v. Gibson* (1988) 204 Cal.App.3d 1425, 1432 [252 Cal.Rptr. 56].) In *People v. Superior Court (Myers)* (1996) 50 Cal.App.4th 826, 830-841 [58 Cal.Rptr.2d 32], another division of the same court considered whether the MDO law was an ex post facto law, in the wake of amendments to the statute that required, among other things, a finding that a person adjudged an MDO was presently dangerous. That court concluded that the law was not punitive in purpose or effect, and thus not an ex post facto statute. (*Id.* at pp. 834, 841.) It pointed out that the United States Supreme Court had clarified ex post facto principles in *Allen v. Illinois* (1986) 478 U.S. 364 [106 S.Ct. 2988, 92 L.Ed.2d 296], holding that Illinois's sexually dangerous persons act was not criminal *within the meaning of the privilege against self-incrimination* because its aim was treatment, not further punishment. (*Myers, supra,* at p. 838.) It also noted that the California Supreme Court had held in *Conservatorship of Hofferber* (1980) 28 Cal.3d 161, 181-182 [167 Cal.Rptr. 854, 616 P.2d 836], that a statute that subjected persons determined to be incompetent to stand trial to involuntary commitment for mental health treatment was not penal, though it utilized criminal conduct as evidence of such persons' ongoing dangerousness. (*Myers, supra,* at pp. 837-838.)

In *People v. Robinson* (1998) 63 Cal.App.4th 348, 349-352 [74 Cal.Rptr.2d 52], the appellate court division that had decided *People v. Pretzer, supra,* 9 Cal.App.4th 1078, again considered whether the MDO law was penal. The court concluded that the law was civil in nature, under both state and federal law, overruling its own case in light of later developments. (*Robinson, supra,* at p. 352.) It based its decision on *People v. Superior Court (Myers), supra,* 50 Cal.App.4th at pages 834-841, and also on *Kansas v. Hendricks* (1997) 521 U.S. 346 [117 S.Ct. 2072, 138 L.Ed.2d 501], in which the United States Supreme Court had held that a law mandating civil commitment for sexually violent predators after imprisonment was not ex post facto as applied. (*Robinson, supra,* at pp. 350-352.) The court decided the statute was civil because its purpose was treatment of dangerous offenders until they were no longer dangerous, not punishment. (*Id.* at pp. 351-352, citing *Hendricks, supra,* 521 U.S. at pp. 367-369 [117 S.Ct. at pp. 2085-2086, 138 L.Ed.2d at p. 519].)

In 1997, another sister appellate court, basing its opinion on *Allen v. Illinois, supra,* 478 U.S. at pages 369-373 [106 S.Ct. at pp. 2992-2994], and *People v. Superior Court (Myers), supra,* 50 Cal.App.4th at pages 834-835,

held that, in a hearing pursuant to section 2972, which authorizes an MDO seeking release after a period of treatment to challenge continued commitment, the privilege against self-incrimination does not bar the MDO's being questioned about his or her mental health. (*People v. Merfeld* (1997) 57 Cal.App.4th 1440, 1444-1446 [67 Cal.Rptr.2d 759].) The court reasoned that the hearing was not punitive because section 2972 provided for a "civil hearing," and the purpose of the statute was not to punish, but to treat, the dangerously mentally disordered. (*Merfeld* at pp. 1445-1446.) Nevertheless, the court cautioned that the MDO could not be forced to testify to "criminal activity." (*Id.* at p. 1446.)

In *Allen v. Illinois, supra,* 478 U.S. at pages 369-375 [106 S.Ct. at pages 2992-2994], the Supreme Court established that the federal privilege against self-incrimination found in the Fifth and Fourteenth Amendments did not apply to civil mental health commitments of prisoners who were sexually violent predators testifying about past crimes. It would defy logic to rule that *Allen* does not apply to MDO's. The sister court that decided *People v. Merfeld, supra,* 57 Cal.App.4th at page 1446, did not specifically state whether the prohibition against testimony on "criminal activity" excluded acts making up the underlying conviction in an MDO determination. However, in addressing the constitutionality of this state's sexually violent predator (SVP) law, the California Supreme Court noted that one of the attributes of the law that supported the decision in *Kansas v. Hendricks, supra,* 521 U.S. at pp. 361-362 [117 S.Ct. at p. 2082, 138 L.Ed.2d at p. 515], was that, "[e]ven though prior criminal conduct was required for classification and commitment as a sexual predator, the statute did not 'affix culpability' or require a finding of 'criminal intent.' " (*Hubbart v. Superior Court* (1999) 19 Cal.4th 1138, 1172 [81 Cal.Rptr.2d 492, 969 P.2d 584].) In *Hendricks* the court had explained that the offender's sexually violent criminal history was used " 'solely for evidentiary purposes, either to demonstrate that a "mental abnormality" exists or to support a finding of future dangerousness.' " (*Hubbart, supra,* at pp. 1172-1173.) Applying *Hendricks,* our Supreme Court concluded that the SVP law was constitutional though prior sexual offenses were used as evidence to help establish that the defendant exhibited the prerequisites for SVP commitment. (*Hubbart, supra,* at pp. 1175, 1179.)

Based on the above history of legislation and constitutional litigation regarding the MDO and like laws, this court holds that defendant's testifying about whether or not she used force or violence in the underlying offense did not violate her privilege against self-incrimination, under either the federal or California Constitutions. (*Allen v. Illinois, supra,* 478 U.S. at pp. 369-375 [106 S.Ct. at pp. 2992-2995]; see *People v. Merfeld, supra,* 57 Cal.App.4th at

pp. 1444-1447.) Defendant's testimony was being sought only as evidence of her status as an MDO presently dangerous and in need of mental health treatment, not to punish her further for past behavior. (See *Hubbart v. Superior Court, supra,* 19 Cal.4th at p. 1175.) She had already pled guilty to and served her sentence for the underlying crime, and she makes no claim that the questions asked by the People were directed at or elicited information about other uncharged crimes for which she might be punished in the future. Her crime could not be held to be a serious or violent felony strike for purposes of the three strikes law. (§§ 487, subd. (c), 667, subd. (d)(1), 667.5, subd. (c), 1192.7, subd. (c).)

In her reply brief, defendant argues that the prohibition of testimony contained in *People v. Pretzer, supra,* 9 Cal.App.4th at page 1085, applies herein despite the cases cited and discussed in this opinion, because the prohibition was directed to unadjudicated issues of criminality in the underlying offense in *Pretzer,* and there are unadjudicated issues in this case. However, defendant overlooks the fact that the *Pretzer* court held the privilege against self-incrimination applied because lengthening the defendant's treatment based on the unadjudicated issues was further criminal punishment for the crime (*ibid.*), and subsequent decisions and modifications of the law discussed above have established that commitment for treatment is not punishment.

## II.

### Sufficiency of the Evidence

 Defendant contends that there was insufficient evidence to support the court's findings that she used force or violence in the underlying offense, and that her severe mental disorder was a factor in committing her underlying crime. As we explain briefly below, we disagree.

Section 2962, subdivisions (b), and (e)(2)(P) and (Q) provide that, to be adjudged an MDO, a defendant must have used force or violence, or threat of such, in the underlying offense, and a severe mental disorder must have been a cause of or aggravating factor in the crime. In considering the sufficiency of the evidence to support MDO findings, an appellate court must determine whether, on the whole record, a rational trier of fact could have found that defendant is an MDO beyond a reasonable doubt, considering all the evidence in the light which is most favorable to the People, and drawing all inferences the trier could reasonably have made to support the finding. (E.g., *People v. Miller* (1994) 25 Cal.App.4th 913, 919 [31 Cal.Rptr.2d 423].) " ' "Although we must ensure the evidence is reasonable,

credible, and of solid value, nonetheless it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts on which that determination depends. [Citation.] Thus, if the [finding] is supported by substantial evidence, we must accord due deference to the trier of fact and not substitute our evaluation of a witness's credibility for that of the fact finder. . . ." [Citation.]' " (*Ibid.*, quoting *People v. Ochoa* (1993) 6 Cal.4th 1199, 1206 [26 Cal.Rptr.2d 23, 864 P.2d 103]; accord, *People v. Pace* (1994) 27 Cal.App.4th 795, 797 [33 Cal.Rptr.2d 352].)

██ The record on appeal contains ample evidence from which the hearing court reasonably could have concluded that defendant's severe mental disorder was a cause of or an aggravating factor in the underlying offense. (*People v. Miller, supra,* 25 Cal.App.4th at p. 919.) The two psychologists, who were familiar with defendant's full mental health history and diagnoses, concluded after interviewing defendant that her disorder was at least an aggravating factor in her offense. Only the psychiatrist, ignorant of defendant's history before 1998 and of statements defendant had made to the other doctors in her interviews, could find no connection between the offense and her mental state. Defendant's testimony, though contradictory, revealed that she had heard soft voices telling her to do some of the actions that made up the crime. The evidence of defendant's lengthy history of mental illness, beginning in her teens, was before the court.

██ Turning to the question of whether force or violence was used in the underlying offense, we note that the California Supreme Court held that the concept of "force," as used in section 2962, subdivision (e)(2)(P), has an ordinary meaning, which requires no further definition for its adjudication. (*People v. Anzalone, supra,* 19 Cal.4th 1074, 1082, superseded by statute in other part as stated in *People v. McCauley* (1999) 73 Cal.App.4th 704 [86 Cal.Rptr.2d 675].) It also concluded that the slight touching necessary for a battery was not sufficient force to uphold an MDO commitment. (*People v. Anzalone, supra,* at p. 1082.) The court relied on its holding in *People v. Anderson* (1966) 64 Cal.2d 633, 639-640 [51 Cal.Rptr. 238, 414 P.2d 366], in which it had decided that the force element of robbery also had no technical meaning peculiar to the law.

The Supreme Court in *People v. Anderson, supra,* 64 Cal.2d at pages 638-639, also discussed with approval an appellate court's decision in an earlier case that a man who had stolen gas at a gas station, and had used no force in obtaining the gas, but had later struggled with and broken free of the station attendant in escaping from the scene, had used sufficient force to be charged with robbery. (*Ibid.*, citing *People v. Phillips* (1962) 201 Cal.App.2d 383, 385-386 [19 Cal.Rptr. 839].)

Based on these authorities, we hold that the evidence that defendant grabbed the money from the victim's hand, broke away from his grasp in the cab in order to escape, and struggled or fought with him to retain the stolen money was substantial evidence of the use of force required under the MDO law to establish defendant's need for treatment on parole as an MDO. Had the only evidence of force used been that required to obtain the money, it is unlikely the hearing court would have found that the force criterion was met, but defendant's determined resistance and struggle meets the criterion.

Defendant suggests in her briefs that the police reports and witness interviews made at the time of the underlying offense were inadmissible hearsay evidence, but such evidence need not be excluded in the absence of a contemporaneous objection, and there may well have been a strategic decision not to challenge the evidence. (E.g., *People v. Dennis* (1998) 17 Cal.4th 468, 530 [71 Cal.Rptr.2d 680, 950 P.2d 1035]; see, e.g., *People v. Ledesma* (1987) 43 Cal.3d 171, 215-216 [233 Cal.Rptr. 404, 729 P.2d 839].)

DISPOSITION

The judgment is affirmed.

Ward, J., and Gaut, J., concurred.

Appellant's petition for review by the Supreme Court was denied November 15, 2000.