Filed 6/15/15  P. v. Moore CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>MILO VANCE MOORE,<br><br>    Defendant and Appellant. | 2d Crim. No. B260745<br>(Super. Ct. No. 14PT-00567)<br>(San Luis Obispo County) |

Milo Vance Moore appeals from the judgment and order determining him to be a mentally disordered offender (MDO) and committing him to the Department of Mental Health (now the Department of State Hospitals) for treatment.  (Pen. Code, § 2962 et seq.)  He contends the order should be reversed because there is no substantial evidence his severe mental disorder caused or aggravated his commitment offense. (§ 2962, subd. (b).)  We affirm.

*Facts*

In February 2010, appellant committed a robbery and an attempted carjacking near the Los Angeles International Airport.  The victim had parked her car on the street near the airport.  She was walking toward her car at about 12:15 p.m., when appellant approached her and asked where he could catch a shuttle to the airport.  She told him there were no shuttles, but that he was within walking distance of the airport. Appellant started to walk away.  The victim got into her car and was about to start it

1

when she saw appellant again. He brandished a knife and demanded her purse and car keys. The victim complied. Appellant got into the car, tried to start it and failed. He got back out of the car and ran away from the scene, taking the keys with him.

Meanwhile, the victim ran into the street and flagged down a passerby who called police. The victim got into the passerby's car and they followed appellant as he ran down the street. She saw appellant toss her keys into the bed of a pickup truck. Appellant eventually ran out of their sight. Before returning to the victim's workplace, they stopped at the pickup truck and retrieved the victim's keys.

Police officers soon located appellant in the area. When they first tried to take him into custody, appellant brandished his knife and said, "I'm not gonna stop." He started to walk away and one of the officers sprayed him with pepper spray. Appellant started running. The foot pursuit ended near a storm drain that runs under the 405 freeway. Appellant dropped his knife and fled into the storm drain. Officers eventually recovered the knife and convinced appellant to leave the storm drain.

About 21 days after he was taken into custody, appellant's trial counsel and the trial court judge expressed doubts regarding his mental competence. Nearly six months later, after receiving treatment at Patton State Hospital, appellant was restored to competency. He pled no contest to one count of second degree robbery and, in December 2010, was sentenced to a term of five years in state prison. As his parole date approached, appellant was referred to the Board of Prison Terms (BPT) for evaluation and found to meet the MDO criteria. Appellant challenged that finding in the trial court.

Dr. Brandi Mathews, a psychologist, was assigned to evaluate appellant for purposes of the MDO hearing. Appellant declined to cooperate in the evaluation. Dr. Mathews reviewed the evaluations prepared for appellant's BPT hearing and concluded that appellant suffers from schizophrenia, a severe mental disorder. Appellant's psychotic symptoms include significant paranoia, auditory hallucinations and disorganized thinking. In the year before appellant's BPT hearing, appellant made serious threats to hospital staff and refused to voluntarily follow his treatment plan. Dr. Mathews opined

2

that appellant represents a substantial danger of physical harm to others by reason of his severe mental disorder.

Dr. Mathews described her understanding of appellant's commitment offense, which was based on the police reports, and opined that appellant's severe mental disorder contributed to his criminal behavior. She reasoned, "One, his mental illness pre-dates the offense. Also, he's reported to an evaluator he was not taking medications at the time. It is evidence from his history that when he does not take medications he becomes quite symptomatic, so he was likely experiencing symptoms at the time of the offense." In addition, appellant was "floridly psychotic" about three weeks later, when he was declared mentally incompetent to stand trial. Appellant told one of the evaluators that, before the commitment offense, he received disability benefits based on mental illness. He told the evaluator, "his S.S.I. income was for paranoid schizophrenia[.]" However, the medical records Dr. Mathews reviewed did not indicate whether appellant had been given an Axis I diagnosis prior to the commitment offense. She also agreed there was no indication in the police report that appellant made psychotic statements during or immediately after the commitment offense.

Dr. George Grosso, a clinical psychologist, opined that appellant suffers from an undetermined type of schizophrenic spectrum disorder, a serious mental disorder. He did not, however, agree that the disorder caused or contributed to appellant's commitment offense. He saw no evidence of "strange, bizarre or unusual behaviors" by appellant on that day. To the contrary, appellant's statements and behaviors that were lucid, logical and focused on achieving his criminal objective. The paramedics who treated appellant after he was sprayed with pepper spray did not report any concerns about his mental health.

Dr. Grasso described appellant as "chronically mentally ill." Since his incarceration, he "displayed signs and symptoms of mental illness However, those signs and symptoms come, go, have varying aspects to them . . . ." Appellant is often paranoid, uncooperative and hostile, but those symptoms do not present themselves "consistently every minute of every day . . . ." There were many days during his hospitalization when

3

appellant did not behave in a dangerous or bizarre manner. Dr. Grasso opined that appellant's current mental disorder causes him to "escalate toward the potential of violence." He maintained however, that he could see "no objective signs or symptoms as a documented available law enforcement record[] to suggest to me that his mental illness was a cause or aggravating factor during this specific violent offense [in] February 2010."

Appellant testified that he was not being treated for a mental disorder when he committed the robbery in February 2010. He was not hearing voices or having delusions. He ran from the arresting police officers because one of them was beating him. Appellant said he tried to steal the car because he was homeless and wanted someplace to sleep. When he committed the robbery, appellant was receiving S.S.I. "for mental illness," but he denied that he had paranoid schizophrenia, or that he is paranoid. Appellant later testified that, in 2002 or 2004, doctors at a Michigan hospital told him he had a mental illness. He was in the hospital because his mother wanted him to receive mental health treatment.

The trial court found that appellant met the MDO criteria. It inferred that appellant's severe mental disorder caused or aggravated the commitment offense because appellant was found mentally incompetent to stand trial only 21 days later. Appellant was not taking medication when the offense occurred and, in the trial court's opinion, the offense "wasn't well thought out. When he was unable to start the car, he apparently tried to pull a knife on two police officers."

*Discussion*

To find that appellant met the criteria for treatment as an MDO, the trial court was required to find that appellant's severe mental disorder "was one of the causes of or was an aggravating factor in the commission of a crime for which [appellant] was sentenced to prison." (Pen. Code,§ 2962, subd. (b).) Appellant contends the MDO commitment order must be reversed because there is no substantial evidence he met this criteria.

In considering whether the trial court's order is supported by substantial evidence, we must "determine whether, on the whole record, a rational trier of fact could

4

have found that [appellant] is an MDO beyond a reasonable doubt, considering all the evidence in the light which is most favorable to the People, and drawing all inferences the trier could reasonably have made to support the finding. (E.g., *People v. Miller*(1994) 25 Cal.App.4th 913, 919 . . . .) ' " 'Although we must ensure the evidence is reasonable, credible, and of solid value, nonetheless it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts on which that determination depends. [Citation.] Thus, if the [finding] is supported by substantial evidence, we must accord due deference to the trier of fact and not substitute our evaluation of a witness's credibility for that of the fact finder....' [Citation.]" ' (*Ibid.*, quoting *People v. Ochoa* (1993) 6 Cal.4th 1199, 1206 . . . ; accord, *People v. Pace* (1994) 27 Cal.App.4th 795, 797 . . . .)" (*People v. Clark* (2000) 82 Cal.App.4th 1072, 1082-1083.)

The record here contains substantial evidence from which the trial court properly could infer that appellant's severe mental disorder caused or aggravated his commitment offense. Appellant testified that he was hospitalized and diagnosed with a mental illness in 2002 or 2004. He received disability benefits for that mental illness and told an evaluator that he was not taking medication for his mental illness when the commitment offense occurred. Within 21 days after the offense, appellant's mental illness was so pronounced that both the trial court and his defense counsel declared a doubt as to his mental competency. Shortly thereafter he was found incompetent for trial. After reviewing appellant's medical history, Dr. Mathews testified that he becomes increasingly paranoid, hostile and violent when he does not take medication. Dr. Grasso also opined that appellant has a chronic, severe mental disorder and becomes violent when not medicated.

This constitutes substantial evidence from which a trier of fact could infer that appellant was suffering from a severe mental disorder when he committed the robbery that sent him to prison. Given his medical history, it is reasonable to infer that appellant was experiencing paranoid, hostile thoughts when the offense occurred. It is also reasonable to infer to that appellant's chronic, severe mental disorder caused or

5

influenced his decision to use a knife during the robbery and while resisting arrest. We conclude the trial court's order is supported by substantial evidence.

The judgment is affirmed.

NOT TO BE PUBLISHED.


YEGAN, J.


We concur:


GILBERT, P.J.


PERREN, J.


6

John A. Trice, Judge

Superior Court County of San Luis Obispo

_____

Gerald Miller, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Scott A. Taryle, Supervising Deputy Attorney General, Eric J. Kohm, Deputy Attorney General, for Plaintiff and Respondent.