Filed 3/26/24  P. v. Walker CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JEREMY WALKER,<br><br>    Defendant and Appellant. | A167922<br><br>(Solano County<br>Super. Ct. No. FCR275822) |

Jeremy Walker—an offender with a mental health disorder (OMHD)—appeals from an order entered after a bench trial extending his involuntary commitment to the Department of State Hospitals until April 24, 2024 under Penal Code sections 2970 and 2972.[1]  Walker argues the trial court erred in finding he was incompetent to waive his right to a jury trial and in finding he met the criteria for recommitment as an OMHD.  We affirm.

---

[1]    All further statutory references are to the Penal Code.  Offenders with a mental health disorder were previously referred to as "mentally disordered offenders," or MDOs.  The Legislature recently changed the terminology to " ' "offender with a mental health disorder." ' "  (See *People v. McCray* (2023) 98 Cal.App.5th 260, 264, fn. 1 (*McCray*).)

1

## FACTUAL AND PROCEDURAL BACKGROUND[2]

Walker has a diagnosis of schizophrenia and has a history of psychiatric hospitalizations commencing in 2002.

In 2003, Walker stabbed a construction worker with a knife while experiencing psychotic delusions and, following psychiatric hospitalizations, was convicted in 2008 of attempted second-degree murder. In 2011, Walker was first designated an OMHD (§ 2962).

In 2012, Walker pled no contest to a 2010 battery on a non-confined person (a medical technician) by a prisoner (§ 4501.5) and was sentenced to three years. In 2014, as a condition of his parole from that sentence, he was transferred to the Department of State Hospitals to receive mental health treatment as an OMHD. In 2017, the trial court extended his involuntary commitment by one year, until April 2018 (§ 2970 et seq.). Over the next several years, the court granted subsequent petitions for continued involuntary treatment, thereby extending Walker's commitment through April 24, 2022.

In 2021, the prosecution petitioned to recommit Walker through 2023. In February 2023, a jury found that petition true and the court extended Walker's commitment to April 24, 2023.

In December 2022, while the preceding petition was still pending, the prosecution filed a petition to extend Walker's commitment until April 24, 2024. Trial was set for April 2023.

---

[2]     We incorporate by reference our unpublished opinion in Walker's prior appeal, assume the reader is familiar with the factual and procedural background, and recite only those facts necessary to resolve the issues before us. (*People v. Walker* (Mar. 11, 2024, A167667) [nonpub. opn.].)

2

*Hearing on Walker's Capacity to Waive Jury Trial*

Before trial, the court ordered Dr. Robert Wagner—who had prepared a forensic evaluation supporting the petition—to evaluate Walker's mental capacity to make a knowing and voluntary waiver of his right to a trial by jury. The court held a hearing on the matter in mid-April 2023, with Walker appearing remotely. At the outset of the hearing, defense counsel asked the court to take judicial notice of the proceedings in the February 2023 jury trial. The court granted the request, noting it had presided over that trial and observed all the proceedings, including Walker's demeanor.

Dr. Wagner testified as an expert in psychology. Dr. Wagner reaffirmed his prior diagnosis that Walker had a severe mental health disorder in the form of schizophrenia, which was not in remission. Walker's symptoms included auditory hallucinations, delusions, disorganized behavior, disorganized thinking, paranoia, and isolating. Dr. Wagner noted that "most of the time," Walker did not think logically. Further, Walker's delusions interfered with his ability to make knowing and intelligent decisions about his life. Dr. Wagner did not believe Walker was competent to make important decisions regarding his legal situation.

Based upon Dr. Wagner's testimony at the competency hearing, his consistent testimony at the February 2023 trial, and the court's observations at that trial, the court found that Walker lacked the capacity to make knowing, intelligent, and voluntary decisions regarding his legal situation, including his right to a jury trial and whether he wanted to waive that right. Defense counsel then waived trial by jury on Walker's behalf.

*Bench Trial*

A bench trial took place in April 2023. The prosecution proffered the testimony of the following three medical professionals.

3

*Dr. Emi Komaki*

Dr. Emi Komaki testified as an expert in psychology. She treated Walker for the prior year and a half. During that time, he displayed symptoms of schizophrenia, including flat affect, minimal speech, slow and limited eye contact, and limited social interaction. Dr. Komaki opined that Walker's schizophrenia was not in remission.

Dr. Komaki described a February 2023 discussion with Walker. Walker denied having a mental illness and stated the reason he was hospitalized was "because his lawyer is making money off of him." He told Dr. Komaki he had a discharge plan to go to the Western Board and Care Home in Los Angeles. He did not believe he needed to take his medications but he would take them once released, though he could not tell Dr. Komaki why he would do so. Dr. Komaki believed Walker had limited insight into his diagnosis; while he was able to verbalize that he had been diagnosed with schizophrenia, he was not aware that his condition was related to him. Dr. Komaki noted that Walker had only minimally participated in "core" groups at the hospital, such as managing mental illness, managing anger, or discharge planning, which were an important part of treatment designed to prepare individuals for discharge from the hospital.

On cross-examination, Dr. Komaki acknowledged that Walker was at a low risk of violence, in part because he had not engaged in any violence, threatening behavior, or destruction of property during the past year. She also noted Walker had been compliant with his medication regimen during this time, and that he had a high level of participation in recreational group activities.

*Dr. Jaswant Khokhar*

Dr. Jaswant Khokhar testified as an expert in psychiatry. Dr. Khokhar—who had been treating Walker since November 2022—agreed that Walker had schizophrenia, a severe mental health disorder, that was not in remission. Walker took prescribed medications to treat his psychosis, voices, visions, delusions, bipolar disorder, and physical and verbal aggression. Walker showed symptoms of schizophrenia, including isolation, withdrawal from others, and being unable to enjoy things that others can enjoy. Walker did not display paranoia, delusions, impulsiveness, or hallucinations, as those symptoms were controlled with medication.

Dr. Khokhar stated that Walker did not believe he had a mental illness and did not understand the consequences of his mental illness, including that he had hurt people in the past and had attempted murder. Walker did not intelligently, rationally, or knowingly participate with the treatment team to understand his diagnosis or why he was taking his medications. While Walker took his medications voluntarily and thought that they helped calm certain symptoms such as voices and ideations, he was unable to understand the benefits and risks of deciding whether to take medications. Dr. Khokhar did not believe that Walker would take his medications if released from the hospital; and absent appropriate medication, Walker would experience paranoia, impulsiveness, delusions, and other symptoms of schizophrenia that were currently controlled by the medications.

*Dr. Robert Wagner*

Dr. Wagner testified that Walker had schizophrenia based on his history of experiencing auditory hallucinations and delusions, disorganized thinking, and paranoia. Walker was aware he had been diagnosed with schizophrenia, but he disagreed with the diagnosis, did not believe he had a

mental illness, and did not recognize a need for treatment or medication. Walker was taking his medications at the present time, but he had told Dr. Wagner that he believed he would otherwise be forced to take the medications, as he had been on involuntary administration of medication orders in the past.

Dr. Wagner opined that Walker would be a substantial danger to others if released into the community. This was based on Dr. Wagner's belief that Walker would "probably stop his medications, and then decompensate" if released; Walker's history of arrests that were all a result of not being medicated; his long history of violence; his failure to engage in treatment at the hospital to learn coping skills and the importance of taking medication; his lack of remorse for the past offenses; and his lack of insight into his mental illness. Dr. Wagner did not believe Walker was in remission.

*Testimony by Walker*

Walker testified on his own behalf. He recognized he was getting some benefit from his medications and denied hearing voices. He felt that he was ready to be released from the hospital after having been confined for 20 years. If released, Walker would live with his mother or another individual, or at Western Board and Care Home, and he would continue taking his medications. Walker stated he had attended the "core" groups when he was at a previous hospital.

*Trial Court's Ruling*

The trial court found beyond a reasonable doubt that Walker had a severe mental health disorder; it was not in remission or could not be kept in remission without continued treatment; and, because of it, Walker presently represented a substantial danger of physical harm to others. In reaching that conclusion, the court found Walker had not voluntarily followed his

6

treatment plan during the preceding year.  The court thus granted the petition and extended Walker's commitment to April 24, 2024.  Walker appealed from the recommitment order.

**DISCUSSION**

## I. Capacity to Waive Jury Trial

Section 2970 permits the prosecution to petition to recommit a prisoner as an OMHD for continued involuntary treatment beyond the termination of parole if certain criteria are met.  (*People v. Blackburn* (2015) 61 Cal.4th 1113, 1122 (*Blackburn*).)  A person facing a petition for recommitment under section 2970 has a right to a trial by jury but may waive that right.  (*Id.*; see § 2972, subd. (a).)

"In a section 2972(a) commitment extension hearing, the decision to waive a jury trial belongs to the defendant in the first instance, and the trial court must elicit the waiver decision from the defendant on the record in a court proceeding.  But if the trial court finds substantial evidence that the defendant lacks the capacity to make a knowing and voluntary waiver, then control of the waiver decision belongs to counsel, and the defendant may not override counsel's decision.  In this context, evidence is substantial when it raises a reasonable doubt about the defendant's capacity to make a knowing and voluntary waiver, and the trial court's finding of a reasonable doubt must appear on the record."  (*Blackburn, supra*, 61 Cal.4th at p. 1130.)

Walker contends the trial court erred in finding he was incompetent to waive his right to a jury trial for two reasons.  First, he asserts the procedure used by the trial court at the competency hearing amounted to an incorrect application of *Blackburn*.  Second, he contends the finding of incompetence was not supported by sufficient evidence.  We are not persuaded by either argument.

7

### A. Procedural Claim

Walker's procedural challenge is premised on his assertion that the trial court, rather than defense counsel, should have conducted the inquiry into his capacity to waive a jury trial. Walker argues the trial court should have addressed him directly to determine his competence, and he asserts defense counsel's examination of Dr. Wagner resulted in counsel's acting contrary to Walker's best interest. We disagree.

*Blackburn* is instructive. There, the California Supreme Court sought to reconcile section 2972's edict that the decision to waive a jury trial rests with an OMHD defendant with the recognition that many such defendants lack the capacity to make a knowing and voluntary waiver decision. (See *Blackburn*, *supra*, 61 Cal.4th at pp. 1127–1130.) Inferring that the Legislature did not intend for a defendant who lacks this capacity to make the decision, the *Blackburn* court set out the procedure for inquiring into a defendant's competence described above, explaining that a trial court "need not conduct a full-blown competency hearing." (*Id.* at p. 1129.)

Contrary to Walker's assertion, *Blackburn* does not require the trial court to personally address the defendant when inquiring as to his capacity to waive a jury trial.[3] And merely because defense counsel conducted the direct examination of Dr. Wagner does not mean counsel either acted contrary to Walker's interests or ran afoul of *Blackburn*. Rather, *Blackburn* expressly places the waiver decision in the hands of counsel when a defendant lacks the capacity to make that decision. (*Blackburn*, *supra*, 61 Cal.4th at p. 1130.) It

---

[3] Walker's reliance on cases requiring the trial court to personally address a defendant before accepting the defendant's *waiver* is misplaced, as the inquiry here was not as to the validity of Walker's *waiver* but rather his *capacity* to waive in the first place.

does not follow that the same counsel who is entrusted to waive a jury trial on behalf of a defendant may not first elicit testimony regarding that defendant's competence as a precursor to making the waiver decision.

### B. Substantial Evidence Supporting Incompetence

Having found no procedural error, we turn to Walker's challenge to the evidence supporting trial court's finding that he was not competent to waive his right to a jury trial. The Attorney General contends the competency hearing testimony, combined with the February 2023 jury trial proceedings (of which judicial notice was taken), constitutes substantial evidence. We agree.

At the competency hearing, Dr. Wagner testified that Walker did not think logically "most of the time." Dr. Wagner further opined that Walker was not able to make important decisions regarding his legal situation. Based on this testimony, as well as the trial court's observations at the trial less than two months prior, the court made a supportable finding on the record that a reasonable doubt was raised as to Walker's capacity to make knowing, intelligent, and voluntary decisions about whether he wished to waive his right to a jury trial. (See *Blackburn*, *supra*, 61 Cal.4th at p. 1130.) Therefore, we conclude the court did not err in finding Walker lacked the capacity to waive a jury trial.

## II. Sufficiency of the Evidence of the OMHD Finding[4]

We next address Walker's challenge to the sufficiency of the evidence supporting the court's finding that he met the OMHD criteria. To prevail on

---

[4]     Walker moved to strike a portion of the Attorney General's brief on the basis that it contains evidence not admitted at the April 2023 bench trial. We deferred ruling on the motion. We now deny the motion as the contested portion of the Attorney General's brief cites to evidence in the record. (See Cal. Rules of Court, rule 8.204(a)(1)(C).) However, in deciding whether

a petition to recommit an offender as an OMHD, the prosecution must prove beyond a reasonable doubt that (1) the patient has a severe mental health disorder; (2) the mental health disorder is not in remission and cannot be kept in remission without treatment; and (3) by reason of that mental health disorder, the patient represents a substantial danger of physical harm to others. (§ 2972, subds. (a)(2), (c).)

Walker does not challenge the trial court's finding that he has a severe mental health disorder in the form of schizophrenia. Rather, he asserts the evidence was insufficient to support the court's remission and dangerousness findings. We are not persuaded.

In considering the sufficiency of the evidence to support OMHD findings, we must determine "whether, on the whole record, a rational trier of fact could have found that defendant is an [OMHD] beyond a reasonable doubt, considering all the evidence in the light which is most favorable to the People, and drawing all inferences the trier could reasonably have made to support the finding." (*People v. Clark* (2000) 82 Cal.App.4th 1072, 1082 (*Clark*).) In making this assessment, we are guided by the principle that it is the exclusive province of the trier of fact to determine credibility of a witness and the truth or falsity of the facts supporting that determination, while also ensuring the evidence is reasonable, credible, and of solid value. (*Id.* at pp. 1082–1083.) Thus, we accord deference to the trier of fact if its finding is supported by substantial evidence, and we do not substitute our evaluation of a witness's credibility for that of the court or jury. (*Id.* at p. 1083.)

---

substantial evidence supports the judgment, we rely only on evidence admitted at the April 2023 trial.

## A. Remission Element

"The term 'remission' means a finding that the overt signs and symptoms of the severe mental health disorder are controlled either by psychotropic medication or psychosocial support," and a person " 'cannot be kept in remission without treatment' " if, among other criteria, the person has not voluntarily followed the treatment plan during the year prior to the proposed recommitment term. (§ 2962, subd. (a)(3); see *In re Qawi* (2004) 32 Cal.4th 1, 23–24.) "In determining if a person has voluntarily followed the treatment plan, the standard is whether the person has acted as a reasonable person would in following the treatment plan." (§ 2962, subd. (a)(3).)

Substantial evidence supports the trial court's finding that Walker's mental health disorder was not in remission and that he had not voluntarily followed the treatment plan during the prior year. All three experts testified that Walker's schizophrenia was not in remission and that he did not believe he had a mental illness. There was also evidence that Walker was not acting reasonably in following his treatment plan, including testimony that he believed he was hospitalized "because his lawyer [was] making money off of him" and that Walker did not intelligently, rationally, or knowingly participate with the treatment team to understand his diagnosis or why he was taking his medications. Further supporting the lack of voluntariness, Dr. Wagner stated that Walker believed he would be forced to take his medication if he did not do so of his own accord.

This evidence supports the trial court's finding that Walker's schizophrenia was not in remission and that he was not voluntarily following his treatment plan during the prior year, meaning his schizophrenia could not be kept in remission without treatment. (See *Clark, supra*, 82 Cal.App.4th at p. 1083 [affirming OMHD finding where testimony from two

11

psychologists provided "ample evidence" from which the hearing court could reasonably make its finding]; *People v. Noble* (2002) 100 Cal.App.4th 184, 191 [noting a trier of fact could reasonably find defendant met OMHD criteria where testimony showed he believed he did not need medication and would discontinue medication without treatment and supervision, causing him to relapse and experience symptoms anew].)

### B.  Substantial Danger Element

The term " 'substantial danger of physical harm to others' " is not defined by statute, but "[i]n context, it appears to mean a prediction of future dangerousness by mental health professionals." (*In re Qawi, supra,* 32 Cal.4th at p. 24.)

Substantial evidence supports the trial court's finding as to dangerousness.  Both Dr. Khokhar and Dr. Wagner opined Walker would not be medication compliant if released, which would cause him to "decompensate" or show additional symptoms of schizophrenia such as paranoia and delusions.  Dr. Wagner opined that Walker would represent a substantial danger if released because he had history of arrests that occurred while he was not medicated, a history of violence, a lack of remorse for his past offenses, and a lack of insight into his mental illness.  Similarly, Dr. Khokhar believed that Walker did not understand the consequences of his mental illness, including that he had hurt people in the past and had attempted murder.

Walker points to Dr. Komaki's testimony that she had assessed Walker to be a low risk of violence and that he had not exhibited violent tendencies or threatening behavior during the prior year.  However, considering the testimony by Drs. Khokhar and Wagner and the deference due to the trial court under the substantial evidence standard, we conclude the court could

12

reasonably have inferred that Walker represented a substantial danger if released. (*See Clark*, *supra*, 82 Cal.App.4th at pp. 1082–1083; *People v. Williams* (2015) 242 Cal.App.4th 861, 875, fn. 6 [testimony of a "single expert opinion as to a person's dangerousness is substantial evidence to justify the extension of his commitment"].).

In sum, we conclude the trial court did not err in finding Walker lacked the capacity to waive his right to a jury trial. We also conclude there was sufficient evidence supporting the court's finding that he met the criteria to be recommitted as an OMHD.

## DISPOSITION

The order extending Walker's commitment to April 24, 2024 is affirmed.

_____

Petrou, J.

WE CONCUR:


_____

Tucher, P.J.


_____

Fujisaki, J.


A167922/*People v. Walker*

14