Filed 4/24/26  Cal Poly Humboldt v. Ahmed CA1/5

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| CAL POLY HUMBOLDT,<br><br>　　　　Plaintiff and Respondent,<br><br>v.<br><br>FAREED ATIQ AHMED,<br><br>　　　　Defendant and Appellant. | A171713<br><br>(Humboldt County<br>Super. Ct. No. CV2300486) |

Fareed Atiq Ahmed (Appellant) appeals from the trial court's order granting the petition of respondent Cal Poly Humboldt (Cal Poly) for a workplace violence restraining order against Appellant (Code Civ. Proc., § 527.8).[1]  We affirm.

## BACKGROUND

In early 2020, Appellant was a student at Cal Poly.  He filed an administrative complaint alleging certain individuals were harassing and discriminating against him on multiple protected grounds, including religion and ethnicity.  The complaint was assigned to Cal Poly's Title IX coordinator,

---

[1] All undesignated statutory references are to the Code of Civil Procedure.

David H.  David investigated the complaint and, in May, sent Appellant an email informing him that the facts as alleged did not establish harassment or discrimination based on a protected category.  A few hours later, Appellant responded with a lengthy email disagreeing with David's conclusion.  The following day, David replied and reiterated his position.

After this May 2020 email exchange, David did not hear from Appellant until October 2022.  At that time, Appellant sent David an email attaching a nearly 200-page document authored by Appellant and titled, "Tome Of Knowledge: Non-Violent Communication 101 - Decoding Covert Passive-Aggressive Communication Tactics."  The trial court described the document in its ruling as "an exhaustive, 199-page recounting of how [Appellant] believes he has been ignored and wronged by members of the student body (known and unknown) and by the University in the investigation and conclusions reached related to his complaints.  He details how, when he received the email in May of 2020 from [David], [Appellant] states: 'felt like my life was in great and imminent danger and felt highly threatened; so much so that I felt the need to kill them before they killed me.'  And how he was out of options.  He goes on to write that he called his therapist and that helped him not feel that way anymore.  Nonetheless, he continues to stand firm in his belief that [David] is part of a satanic cult and the cult's direct harm on not only [Appellant] but the community at large."

In the document, Appellant's description of his reaction to receiving David's 2020 email also includes the following: "I felt a lot of violence and hostility in the atmosphere.  I felt murderous energy around me and trying to flow into me to kill me and make me kill others.  I felt like I needed to do something to make sure the situation is still being handled properly and I take a course of action that is serving the mutual interests of all."  Appellant

2

claimed, "I feel very certain that David H[.] is actually one of the leaders of the Secret Satanic Cults in this region and is at the center of this Investigation," and "I feel very certain that . . . David H[.] is a serial killer rapist."

In February and March of 2023, Appellant sent lengthy emails to other Cal Poly employees which included numerous references to David, including that Appellant was subject to "discrimination and retaliation . . . by faculty members . . . under the command and direction of David" and that David and other Cal Poly officials were "attempting to provoke aggressive responses from me to violently retaliate against the members of the population who were targeted [*sic*] me."

In March 2023, Cal Poly filed a petition seeking a workplace violence restraining order to protect David. The trial court issued a temporary restraining order. After multiple attempts, Cal Poly served Appellant in October. In November, Appellant sent an email to Cal Poly employees stating that David "is a dangerous predator to the CSU community" who "has been trained by the Department of Defense Intelligence Agency to utilize weaponized systems of communication" and who "has been preying upon the vulnerability of the weakest members of the population through deadly use of his military-grade weaponized communication systems."

At the July 2024 trial, the witnesses were David and Appellant. The court subsequently issued a written order granting the petition. The order found, "[Appellant's] writings make it clear that he sees [David] as an ongoing threat to him . . . . [Appellant] repeatedly expresses how the language used by [David] made him feel victimized by the University, [David] in particular. He goes on to describe his firmly held and current belief that [David] is a 'serial killer rapist' and part of a conspiracy against him, and is a

3

leader in a 'secret satanic cult.' While the writings espouse to be a 'draft textbook' on nonviolent communication, [Appellant] continues to feel wronged and discriminated against by the University community. [Appellant] equates [David] to a psychopath. All the while writing that he hopes to find a peaceful resolution to the dispute. [¶] The Court has reviewed the exhibits and the testimony and does hereby conclude that there is . . . clear and convincing evidence that a reasonable person would fear for their safety if provided with the communications. [Appellant] communicated roughly 2.5[ years] after the last communication with [David] to express that he has ruminated on those communications for years and when he received them, he felt murderous. In his dissection of the email sent by [David], he concludes that [David] is being hostile and aggressive towards him. That he feared for his life as a result of the communication; felt he had to kill or be killed, and he currently holds beliefs that [David] is a dangerous person. It's reasonable to conclude that a person would have an ongoing fear for their own safety after receiving the communication." This appeal followed.[2]

DISCUSSION

I. *Substantial Evidence*

Appellant argues no substantial evidence supports the order. We reject the challenge.

The statute in effect at the time of the appealed-from order provided that a restraining order may be sought by an employer "whose employee has

---

[2] The original restraining order expired in September 2025. On our own motion, we take judicial notice of a postjudgment order extending the restraining order through October 2027. (See *In re A.S.* (2012) 205 Cal.App.4th 1332, 1339 ["While postjudgment evidence is generally not admissible on appeal [citation], it may be considered to determine whether it renders an issue moot on appeal"].)

4

suffered unlawful violence or a credible threat of violence from any individual . . . ." (Former § 527.8, subd. (a); see also *County of Los Angeles v. Niblett* (2025) 116 Cal.App.5th 454, 458, fn. 2 ["Although the Legislature made changes to section 527.8 after the trial court issued the [workplace violence restraining order] . . . the version of the statute that was effective on the date of the order's issuance governs our appellate review"].) The statute defined credible threat of violence as "a knowing and willful statement or course of conduct that would place a reasonable person in fear for their safety . . . and that serves no legitimate purpose," and further defined course of conduct as "a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose . . . ." (Former § 527.8, subd. (b)(1)–(2).)

" '[W]e review an injunction issued under section 527.8 to determine whether the necessary factual findings are supported by substantial evidence. [Citation.] Accordingly, we resolve all factual conflicts and questions of credibility in favor of the prevailing party, and draw all reasonable inferences in support of the trial court's findings.' " (*CSV Hospitality Management, LLC v. Lucas* (2022) 84 Cal.App.5th 117, 123.)

"In every appeal, the appellant has the duty to fairly summarize all of the facts in the light most favorable to the judgment. [Citations.] 'Further, the burden to provide a fair summary of the evidence "grows with the complexity of the record. [Citation.]" ' [Citation.] To meet its burden on appeal to show a finding of fact is not supported by substantial evidence, appellants cannot recite only evidence in their favor, but must ' "set forth in their brief *all* the material evidence on the point and *not merely their own evidence.* Unless this is done the error is deemed to be waived." ' " (*Slone v.*

*El Centro Regional Medical Center* (2024) 106 Cal.App.5th 1160, 1173 (*Slone*).)

Appellant's briefs include no statement of facts and fail to discuss all the evidence supporting the court's finding of a credible threat. The trial transcript is 200 pages long and there are nearly 300 pages of trial exhibits. " 'A reviewing court will not independently review the record to make up for appellant's failure to carry his burden.' " (*Slone, supra,* 106 Cal.App.5th at p. 1174.) Appellant's substantial evidence challenge is forfeited.

II.     *Privilege Against Self-Incrimination*

Appellant argues the trial court erred in compelling him to testify after he invoked his privilege against self-incrimination. We affirm.

Cal Poly called Appellant as a witness. Before being sworn in, Appellant informed the court, "I'm not comfortable with testifying against myself. That's a violation of my Fifth Amendment rights." During the subsequent discussion, Appellant explained that he was willing to testify when called as a witness by his attorney, but objected to being called as a witness by Cal Poly: "I'm not refusing to testify. [Cal Poly's attorney] will have his opportunity to cross-examine me when I testify on my own behalf. Now, I don't understand what [Cal Poly's attorney's] issue is with having me testify on my own behalf rather than against me. He can ask me all of the questions he has lined up to ask me when I come on the witness stand as my own witness." The trial court ruled Appellant could not refuse to testify when called by Cal Poly.

"Both the federal and California Constitutions guarantee the privilege against self-incrimination. (U.S. Const., 5th Amend; Cal. Const., art. I, § 15.) Two distinct and separate testimonial privileges are covered by these guarantees: (1) in criminal cases, an absolute right not to be called or to

6

testify as a witness, and (2) in both civil and criminal cases, the right not to answer questions which might tend to incriminate the witness in criminal activity." (*People v. Clark* (2000) 82 Cal.App.4th 1072, 1079 (*Clark*).)

This was a civil, not a criminal, proceeding and Appellant therefore had no absolute right not to testify. (*Clark, supra*, 82 Cal.App.4th at p. 1079.) Appellant asserts that a workplace violence restraining order proceeding is criminal in nature. The authority relied on by Appellant holds that, for purposes of the absolute right not to testify as a witness, "[a] civil contempt proceeding is criminal in nature because of the penalties that may be imposed." (*In re Witherspoon* (1984) 162 Cal.App.3d 1000, 1001.) No criminal penalties may be imposed in a section 527.8 proceeding, and Appellant has therefore not established that it is criminal in nature.

To the extent Appellant contends that he also invoked his right not to answer questions which might tend to incriminate him, we reject the claim. " '[A] blanket refusal to testify is unacceptable; a person claiming the Fifth Amendment privilege must do so with specific reference to particular questions asked or other evidence sought. . . . [O]nce this is done, the trial court must undertake a particularized inquiry with respect to each specific claim of privilege to determine whether the claimant has . . . establish[ed] that the testimony or other evidence sought might tend to incriminate him.' [Citations.] '[T]he burden is on the party or witness [invoking the privilege] to show that the testimony or other evidence could tend to incriminate him or her.' " (*In re Marriage of Sachs* (2002) 95 Cal.App.4th 1144, 1151–1152, fn. omitted.) Appellant's blanket refusal was insufficient to invoke this privilege as to any particular testimony. Indeed, Appellant did not even purport to be unwilling to answer any specific question; to the contrary, he expressly stated he would answer Cal Poly's questions as long as they were asked in cross-

examination during Appellant's presentation of evidence. Appellant has not established error.

For the first time in his reply brief, Appellant argues his refusal to testify when called by Cal Poly should have been granted as an accommodation for his disabilities. The contention is both raised too late and lacks any supporting authority, and is thereby forfeited. (*Tellez v. Rich Voss Trucking, Inc.* (2015) 240 Cal.App.4th 1052, 1066 [" ' "[p]oints raised for the first time in a reply brief will ordinarily not be considered" ' "]; *ibid.* ["When an appellant asserts a point but fails to support it with reasoned argument and citations to authority, we treat the point as forfeited"].)

III.  *Due Process*

Appellant argues the trial court violated his due process rights by excluding a defense witness. We reject the claim.

Appellant sought to call his mother as a witness. His attorney made the following offer of proof: "[Appellant] testified that he sent a copy of the document that is [the] basis for the restraining order to her, [for] her notes before sending it off to David H[]. She reviewed it, went over [her] concerns, and then she discussed the concerns with [Appellant]. After [Appellant's] notes, she went back and re-read it, approved it. She can talk about why she approved it, what is in it, and then also her role in assisting [Appellant] with communication." After Cal Poly objected, arguing evidence of "the mother's subjective interpretation of a document written by her son" is "not legally relevant," the trial court ruled Appellant could not call his mother.

Appellant asserts that the evidentiary ruling violated his due process rights.[3] He does not claim he raised this objection below, and cites no

---

[3] Appellant does not contend the ruling was in error under state evidence law.

authority for his argument other than the constitutional provisions themselves. Even if the claim were preserved and properly raised on appeal, it would fail. "The due process right to present evidence is limited to relevant evidence of significant probative value to the issue before the court." (*Maricela C. v. Superior Court* (1998) 66 Cal.App.4th 1138, 1147.) The issue at trial was whether Appellant had made "a knowing and willful statement or course of conduct that would place a reasonable person in fear for their safety . . . and that serves no legitimate purpose." (Former § 527.8, subds. (a), (b)(2).) Appellant's mother's editing of and opinions about the document Appellant sent to David was not of significant probative value to this issue.[4]

To the extent Appellant also argues the trial court violated his due process rights in denying his request to testify only during his own case rather than be called by Cal Poly, we reject the claim. He fails to establish any error in this ruling, and his attorney had ample opportunity to question him while he was on the stand.

Finally, Appellant asserts his substantive due process rights were violated because, "[a]s a result of the Workplace Restraining Order proceedings, [Appellant] was first temporarily barred from continuing his studies as a student at Cal-Poly Humboldt, and during the trial, lost his student status entirely." Even assuming this claim were both preserved and a basis for reversing the appealed-from order, the record citations provided do not support the assertion that any change in Appellant's student status was a result of the trial court proceedings.

---

[4] Appellant complains that his mother was excluded from the courtroom because she had been identified as a potential witness. He does not claim this ruling was in error or articulate any legal argument supporting such a claim.

IV.    *First Amendment Rights*

Appellant argues his writings were constitutionally protected speech and therefore cannot be the basis for the restraining order.  Appellant does not claim that he raised this argument below, much less provide supporting record citations so establishing.  He has therefore forfeited the claim and we decline to consider it.  (*San Diego Police Dept. v. Geoffrey S.* (2022) 86 Cal.App.5th 550, 579 ["Because the record does not demonstrate that any First Amendment issue was raised below, we conclude that it was forfeited.  In both criminal and civil cases, a constitutional claim is generally forfeited by the failure to assert it in the trial court."].)

## DISPOSITION

The order is affirmed.  Cal Poly is awarded its costs on appeal.

SIMONS, J.

We concur.

JACKSON, P. J.
BURNS, J.

(A171713)

10